[No. 13497. In Bank. — December 30, 1891.]

## MANUEL EYRE, APPELLANT, v. A. K. P. HARMON ET AL., RESPONDENTS.

MINING CORPORATIONS — DUTY OF DIRECTORS — POSTING OF ACCOUNTS — ALTERNATIVE OBLIGATION. — Under section 1 of the act of April 23, 1880, the directors of mining corporations are required to cause to be posted in the office of the company on the first Monday of each and every month, either a balance-sheet or an itemized account, showing in detail all the matters especially enumerated in that section, but are not required to cause both to be posted.

ID. — BALANCE-SHEET — GENERAL SUMMATION OF ACCOUNTS. — Where the directors of a mining corporation cause to be posted in the office of the corporation, in due time, a paper which is in fact a balance-sheet according to the understanding of merchants and book-keepers, showing a summation or general balance of accounts for the previous month, but not the particular items going to make up the several accounts, it is a sufficient compliance with the law.

STATUTORY CONSTRUCTION — TRANSPOSITION OF WORDS. — In the construction of a statute, words or sentences may be transposed whenever it is

necessary to do so, in order that every word may have a practical effect, according to its appropriate meaning.

ID. — REPORTS OF SUPERINTENDENT — NEGLECT — LIABILITY OF DIRECTORS. — The directors of a mining corporation are liable to the liquidated damages provided for in section 3 of the act of April 23, 1880, for failure to have the superintendent make the weekly reports provided for in section 1 of the act; and the fact that no penalty is imposed by the statute upon the superintendent for a failure to make such reports does not relieve the directors as the governing body of the corporation from their duty to control the superintendent, and direct him in good faith, under penalty of dismissal, to make the reports required; but they are not liable for the mere neglect of the superintendent without any fault on their part.

ID. — REMEDIAL AND PENAL STATUTE — LIQUIDATED DAMAGES — WILLFUL NEGLECT — GOOD FAITH OF DIRECTORS. — The act of April 23, 1880, concerning mining corporations, is both remedial and penal in its nature, its general purpose being to secure to stockholders their right to have general information of the manner in which the business of the corporation is being conducted; and in order to justify a recovery of the liquidated damages therein provided for, at the suit of a stockholder against the directors for failure to have the reports and accounts made and posted as required by the act, it must appear that there has been a willful and intentional failure to comply with its requirements on their part. Impossibilities are not required of them, but only good faith in their direction to the superintendent to obey the positive requirements of the law.

ID. — PENAL STATUTES — OBJECT OF LAW — GIVING EFFECT TO WORDS. — Although penal clauses of statutes ought to be strictly construed, yet when the intent and object of the law is plain, such object must not be defeated by an overnice construction. Common sense must be applied to the terms made use of, in order to avoid an absurdity, and no word is to be eliminated, if a sensible meaning can be given to it, unless the real object of the statute would be defeated by giving such word its meaning; but effect must be given to each word, when not to do so is to deprive the law of the vitality necessary to secure respect to its commands.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco.

The facts are stated in the opinion of the court.

*Manuel Eyre*, Appellant, *in pro. per.*

*Newlands, Allen & Herrin*, for Respondents.

DE HAVEN, J. — The plaintiff is a stockholder of a mining corporation formed under the laws of this state, and this action is to recover from the defendants, who

are directors of said corporation, a penalty of one thousand dollars for their alleged failure to have made and posted in the months of October and November, 1888, certain accounts provided for by the statute for the better protection of stockholders of mining corporations, approved April 23, 1880. (Stats. 1880, p. 400.) The act provides: " Sec. 1. . . . . It shall be the duty of the directors, on the first Monday of each and every month, to cause to be made an itemized account or balance-sheet for the previous month, embracing a full and complete statement of all disbursements and receipts, showing from what sources such receipts were derived, and for what and to whom such disbursements or payments were made, and for what object or purpose the same was made; also all indebtedness or liabilities incurred or existing at the time, and for what the same was incurred, and the balance of money, if any, on hand. Such account or balance-sheet shall be verified under oath by the president and secretary, and posted in some conspicuous place in the office of the company. . . . . It shall also be the duty of the superintendent to file with the secretary a weekly statement, under oath, showing the number of men employed under him, and for what purpose, and the rate of wages paid to each one. He shall attach to such account a full and complete report, under oath, of the work done in said mine, the amount of ore extracted, from what part of the mine taken, the amount sent to mill for reduction, its assay value, the amount of bullion received, the amount of bullion shipped to the office of the company or elsewhere, and the amount, if any, retained by the superintendent. It shall be his duty to forward to the office of the company a full report, under oath, of all discoveries of ore or mineral-bearing quartz made in said mine, whether by boring, drifting, sinking, or otherwise, together with the assay value thereof." " Sec. 3. . . . . In case of the failure of the directors to have the reports and accounts current made and posted as in the first section of this act provided, they shall be liable, either severally or

jointly, to an action by any stockholder, . . . . for one thousand dollars liquidated damages, with costs of suit."

The court below made an order striking from the complaint certain allegations which charged the defendants with failure to cause the superintendent to make and file the reports mentioned in section 1 of the act above mentioned, and also with a failure to have posted in the office of the company the superintendent's itemized account. This ruling of the court was excepted to. The case was then submitted to the court upon an agreed statement of facts, showing that a paper, in the following form, and duly verified, was posted in the month of October, 1888:—

"Statement of the Consolidated Imperial Mining Company for the month of October, 1888.

" RECEIPTS.

| | |
|---|---:|
| For sale of company's stock . . . . . . . | $962 15 |
| Assessment No. 25 . . . . . . . . . . | 1,548 45 |
| | $2,510 60 |

" EXPENDITURES.

| | |
|---|---:|
| For superintendent's draft . . . . . . . | $175 87 |
| Office expenses . . . . . . . . . . | 271 50 |
| Interest on overdraft . . . . . . . . . . | 2 15 |
| | $449 52 |
| Cash on hand October 31 . . . . . . . | $1,633 89 |

"A. K. P. Harmon, President.<br>"C. L. McCoy, Secretary."

There was also posted a statement, in similar form, for the month of November, 1888.

It was further agreed that each of the statements referred to was a balance-sheet according to the understanding of the meaning of that term by book-keepers and merchants, and that both were made and posted in supposed compliance with the act of the legislature before referred to, and for the purpose of so complying; that such had been the form of the accounts since the passage of the act, and that no stockholder prior to the

commencement of this suit had ever complained; and
further, that complete books were kept, showing in de-
tail the items from which such balance-sheets were
made. Upon these facts, the court gave judgment in
favor of the defendants. The plaintiff appeals. It will
thus be seen that the question arising upon the ruling of
the court below in striking out parts of the complaint,
and in giving judgment upon the agreed facts, involves
a construction of the provisions of sections 1 and 3 of
the statute above referred to.

1. It being conceded by the agreed statement of facts,
that there was properly posted in the office of the corpo-
ration of which defendants are the directors a paper
which was in fact a balance-sheet according to the un-
derstanding of merchants and book-keepers, we think
this was a sufficient compliance with the law in that re-
spect. The proper construction of the statute is, that
the directors shall cause to be posted either a balance-
sheet or an itemized account showing in detail all the
matters especially enumerated in section 1. This would
appear with greater clearness if in the formation of the
sentence requiring such posting, the word "balance-
sheet" had been placed before the words "itemized ac-
count." But it is very certain that the statute refers to
and expressly names two papers, a balance-sheet and an
itemized account, either one of which may be posted.
Each of these words has a well-known and definite mean-
ing, entirely different from the other, and they cannot be
construed to mean the same thing, and both to designate
a paper stating in minute detail all the separate items of
an account. A balance-sheet, as that word is uniformly
used by book-keepers and business men, is a paper which
shows a "summation or general balance of all accounts,"
but not the particular items going to make up the sev-
eral accounts, and it is therefore essentially different
from a paper embracing "a full and complete statement
of all the disbursements and receipts, showing from what
sources such receipts were derived, and for what and to
whom such disbursements or payments were made, and

for what object or purpose the same was made "; but such matters may find an appropriate place in an itemized account, and the clause just quoted from section 1 of the statute under consideration must therefore be construed as applying only to such an account, and the section is to be read as if such clause immediately followed the words "itemized account," in accordance with the familiar rule of construction, which permits the transposition of words or sentences whenever it is necessary to do so, in order that every word may have a practical effect according to its appropriate meaning. (*French* v. *Teschemaker*, 24 Cal. 539.) See also *Winters* v. *Campbell*, 4 Saw. 121, in which case a section was construed as if a proviso found in the middle of a clause were placed at the end, in order to give effect to the obvious meaning of the section.

2. The remaining question before us arises upon the ruling of the court striking out certain portions of the complaint, and in our opinion, the court erred in so far as such ruling relates to the allegations of the complaint charging the defendants with a failure to have the superintendent make the reports referred to in section 1.

Section 3 declares that " in case of the failure of the directors to have the reports and accounts made and posted, as in the first section of this act provided, they shall be liable, either jointly or severally," to an action by any stockholder to recover one thousand dollars as liquidated damages. The natural and obvious meaning of this language is, that for a failure upon the part of the directors to have such reports made and accounts posted, as are provided for in the first section of the act, they shall be liable to the penalty named. Any other construction is forced and unnatural, and opposed to well-settled rules adopted by courts in the interpretation of statutes.

The only reports directed by section 1 to be made are the weekly reports of the superintendent showing the work done in the mine, the amount of ore extracted, from what part of the mine taken, the amount and assay

value of the ore sent to mill for reduction, the amount
of bullion received and shipped to the office of the com-
pany or elsewhere, and the amount, if any, retained by
the superintendent; and the other report in relation to
discoveries of ore, to be made on the occasion of such
discovery. Now, unless these are the reports referred
to in section 3, it is evident that the word as there found
must be given no meaning whatever; it must be elimi-
nated entirely, and the section read as if it did not appear
therein; and in addition to this there must also be at-
tributed to the legislature the absurdity of declaring in
elaborate detail what reports shall be made by the super-
intendent, and yet making no provision for the enforce-
ment of the duty enjoined. It will not do to say, in
answer to this, that the section only refers to reports
which are to be made *and* posted, and therefore cannot
apply to those of the superintendent, as they are not to
be posted, for that is only another way of stating that
nothing whatever was meant by the use of the word
" reports." The language of section 3 is plain not
only in itself, but becomes even more so, if possible,
when considered, as it must be, with reference to the gen-
eral scope and purpose of the act of which it forms a
part. The statute proceeds upon the theory that the
stockholders, whether in the minority or majority, have
a right to be informed as to the manner in which the
business of the corporation is being conducted, the re-
ceipts and disbursements, the number of men employed,
and the wages paid each, and also the value of the bul-
lion shipped from time to time, and how much ore or bul-
lion remains with the superintendent, and also whether
any discoveries of ore have been made in the prosecution
of the work, which, if known, would affect the value of
the mine in which they own an interest. The means by
which the stockholders are to receive this information
are provided with great particularity in section 1. These
means are, — 1. Full and complete books of account to
be kept by the secretary, and to be open to the inspec-
tion of the stockholders; 2. The monthly balance-sheet,

or in place thereof an itemized account, to be posted in the office of the company; and lastly, the reports of the superintendent, which are to be forwarded to the office of the company, and kept there subject to the inspection of stockholders. Now, undoubtedly it is the intention of this law that all of these accounts and reports shall be made as directed. There is nothing unreasonable in what is required, and it is the duty of the court, unless there is some fatal omission which defeats its intention, to so construe the statute that it shall have effect. It is urged that the duty of making reports cannot be compelled, because no penalty is imposed upon the superintendent for a failure to make them. This argument, however, does not meet the real question involved here, which is only whether the act has made the directors of the corporation liable for their failure to have these reports made. The directors are the governing body of the corporation, and, as such, have the power to employ the superintendent, to prescribe his duties, and to dismiss him if he fails to perform such duties; they have the right to direct the superintendent to make these reports, and if such direction were understood by him to be given in good faith, it would doubtless be obeyed, as it would be unreasonable to suppose that officer would refuse to obey when such action might insure his dismissal from his position. It was doubtless in view of these obvious considerations, which must have been in the minds of the legislators as men of ordinary experience, that the act in its penal clause addresses itself to the governing and controlling body of the corporation, and makes the directors liable for a failure to have made the reports referred to in section 1. This does not, as respondent contends, make the directors liable for the simple neglect of the superintendent without any fault on their part. The statute is both remedial and penal in its nature. Its general purpose is to secure to stockholders their right to have general information of the manner in which the business of the corporation is being conducted, and in order to enforce this right they

are permitted to institute actions for liquidated damages for a failure on the part of the directors to give them the information referred to in the statute; but in order to justify a recovery, it must appear that there has been an intentional disregard of the law, a willful neglect to comply with its requirements. Under this construction directors are only liable for a willful and intentional failure to have the superintendent perform his duty. Impossibilities are not required of them, but only that they shall, in good faith, direct this officer, who is at all times subject to their control, to obey the positive requirements of the law in the matter of these reports.

The fact that the mine is being operated in a distant state or territory does not place it beyond the power of the superintendent to make these reports. They are not required to be on file on the first Monday of the month, or at any other particular date; they are to be made and forwarded weekly, and if so made will be received weekly, and that is all that is required, and this is easy of accomplishment. The reports in regard to discoveries of ore are only to be made upon the occasion thereof.

As thus construed, this statute imposes no unreasonable burden upon directors of this class of corporations. It requires only good faith and common honesty in their management of the corporate property, and enforces from them a proper regard for the rights of those for whom they are trustees, so far at least as giving information of the working and development of the mine, and of all receipts and expenditures and discoveries attending the same. It is true that this class of statutes, in their penal clauses, ought to be strictly construed; but this rule does not mean that when the intent and object of the law is plain, such object may be defeated by an overnice construction. In the language of the supreme court of the United States, in *United States* v. *Hartwell*, 6 Wall. 396: "The rule does not exclude the application of common sense to the terms made use of in the act, in order to avoid an absurdity which the legislature ought not to be presumed to have intended."

To hold that the word "reports," as found in the penal clause of this act, is meaningless is not only to refuse to give effect to a word which, in the connection used, obviously and naturally refers to the reports of the superintendent, which by section 1 are required to be made, but such construction defeats the general purpose of the statute itself. But it is a general rule, applicable to the construction of penal as well as other statutes, that no word is to be eliminated from a section by the court if a sensible meaning can be given to it, unless by giving such word its meaning the real object of the statute would be defeated. With much greater reason is the court required to give effect to each word in a sentence, when not to do so is to deprive the law of the vitality necessary to secure respect for its commands. Applying this rule, there is no difficulty in the construction of section 3 of this act. It simply makes the directors liable to the penalty named, for a willful failure to have such reports made and accounts posted as are referred to in section 1. If the directors cause the reports of the superintendent to be made, and the monthly accounts to be posted as required by the statute, the law is complied with; otherwise not, and they incur the statutory penalty if the failure to do so was intentional on their part.

Judgment reversed.

SHARPSTEIN, J., GAROUTTE, J., and BEATTY, C. J., concurred.

MCFARLAND, J., dissented.

Mr. Justice Harrison, being disqualified, did not participate in the foregoing opinion.