[S. F. No. 1011.    Department One.—December 18, 1897.]

FREDERICK BALL, Respondent, v. GEORGE B. TOLMAN et al., Appellants.

MINING CORPORATIONS—RIVER MINING—USE OF DREDGING BOAT—FAILURE TO POST ACCOUNTS—STATUTORY LIABILITY OF DIRECTORS.—A corporation organized under the laws of this state for the purpose of mining, which carried on mining operations in the bed of the Sacramento river, by the use of a dredging boat, and appliances for the purpose of extracting gold from the debris in the bed of the stream, is within the provisions of the act of April 23, 1880, for the better protection of the stockholders in such corporations, and the fact that the purpose of the corporation was very feebly prosecuted, and that the work done was without profit, cannot dispense with or excuse the discharge of the duty of the directors to post an itemized account or balance sheet in the office of the corporation, as required by the terms of that act, and, upon their entire failure so to do, they are liable under the statute to a judgment at the suit of a stockholder for the sum of one thousand dollars liquidated damages, as penalty for the violation of that act.

ID.—INTENTIONAL FAILURE OF DIRECTORS—CASE DISTINGUISHED—IGNORANCE OF LAW.—The case of Eyre v. Harmon, 92 Cal. 580, in reference to the necessity of a willful and intentional violation of the statute by the directors of a mining corporation, has no application where there is an entire failure of the directors to comply with the statute, and no facts of excuse are set forth, or attempted to be proved other than their ignorance of the statute.

ID.—CONSTRUCTION OF STATUTE—PENAL AND REMEDIAL ACT.—The act of April 23, 1880, for the better protection of stockholders in mining corporations is not only penal in its nature, but it is also remedial and of much consequence and value to stockholders, and it must receive a construction with reference to its beneficent objects as well as to its penal character.

ID.—IMMATERIAL EVIDENCE—BAD FAITH OF PLAINTIFF—DISCHARGE FROM SER
VICE—REVENGE—KNOWLEDGE OF ACCOUNTS.—Evidence of letters of the
plaintiff offered for the purpose of showing that the suit was brought
in bad faith "solely 'to get even with defendant for removing him
from his berth of assistant superintendent," and not offered for
purposes of impeachment of the plaintiff as a witness or to contra-
dict his testimony, was properly excluded as immaterial; nor can the
fact that plaintiff, by reason of his connection with the company,
had knowledge of the accounts, and had the means of learning
about them after his discharge, excuse noncompliance of the di-
rectors with the law.

APPEAL from a judgment of the Superior Court of the City
and County of San Francisco and from an order denying a new
trial.   J. M. Seawell, Judge.

The facts are stated in the opinion.

Moses G. Cobb, for Appellants.

J. M. Lewis, and I. F. Chapman, for Respondent.

CHIPMAN, C.—This action is brought under the act ap-
proved April 23, 1880, entitled "An act amendatory of an act for
the better protection of the stockholders in corporations formed
under the laws of the state of California for the purpose of car-
rying on and conducting the business of mining, approved March
30, 1874." Trial by the court, and plaintiff had judgment for
$1,000 liquidated damages and as penalty for the violation of
said act.   From the judgment and order denying defendants'
motion for a new trial this appeal is taken on a statement of the
case.

It appears from the evidence that the corporation of which
defendants were directors, and in which plaintiff was a stock-
holder, fitted up a boat for dredging for gold in the sand in Oak-
land creek (Alameda county), but it does not appear that any
work was done there.   The boat was moved up the Sacramento
river, and the dredger operated more or less in that river near
and below the mouth of the American river during the months
of January, February, and March, 1896, and finally the scheme
was abandoned as a failure.   Plaintiff was employed as assistant
superintendent about three months, and ceased work as such on
the last of January, 1896.   The only mining operations carried

on were with the dredger, and the plan was to elevate the mud and sand from the bed of the river by an endless chain with buckets on it, and discharge the contents of the buckets in screens on the boat, and there, by an amalgamator and concentrator, save the gold supposed to be in this debris. There were never any returns from this mining. The books of the secretary showed expenditures of $617.77, and receipts $759.20, for the month of January; and for the month of February, disbursements $345.10, and receipts $319.10. All the receipts came from subscriptions of stockholders. It is not claimed by defendants that they at any time complied with the statute by making and posting the itemized accounts or the balance sheet required by its provisions.

1. Appellants contend that the dredging boat was merely experimental, and its operations were not "mining" in the sense of the statute of 1880; that the gathering of gold dust from the bottom of the Sacramento river or any other navigable stream would not be such "mining"; that the bottoms of navigable rivers are not the subject of private appropriation by individuals for the purpose of mining; that the shores of navigable rivers and the soil under the rivers belong to the state and not to the United States. We do not feel called upon to examine the numerous authorities submitted in support of the foregoing propositions.

It was held in *Francais v. Somps*, 92 Cal. 503, that the act in question applies to all corporations formed for the purpose of carrying on and conducting the business of mining. It is admitted that the corporation here was formed for that purpose, and it is also admitted that it carried on to some extent the business for which the company was organized, to wit, to take gold from the bed of the Sacramento river.

It is true in this case, as it was in *Francais v. Somps, supra,* that the purpose of the corporation was very feebly prosecuted. But it was there said: "The itemized accounts or balance sheets and reports would have shown very little, but that little might, in some cases, be of interest to stockholders, and we cannot apply the maxim, *De minimis non curat lex*, in this case, because we think the law does care for little things."

The principal contention is, that the particular work done by

the company was not "mining," and therefore appellants were not called upon to make any reports whatever under the act. It may be that if a corporation formed for mining purposes should engage in business entirely foreign to those purposes, and having no sort of relation to them, that the act would not require the directors to do those things mentioned in it. But that was not the case here. The company was organized "for the purpose of securing and working placer mines, to deal in mines and mining claims, and the erection of plants for working the same, and to do any other business connected therewith as the board of directors shall deem necessary."

It was held in *Miles v. Woodward,* 115 Cal. 308, that the law applies not only to corporations which extract gold or silver from ores, but equally to those which extract it by the methods of placer or hydraulic mining. Among the various methods of placer mining those of turning river and creek channels to expose the placers in their beds, and of dredging the beds where it is impracticable to divert the channel, are well known and recognized. Placer mining is simply extracting the gold from placers, wherever situated—in dry channels and in channels for the time filled with water. It does not make the process any the less placer mining that the gold is found in deep channels, in navigable streams, or in estuaries or creeks and rivers where the sea ebbs and flows. One of the defendants testified: "We went there for the purpose of raising the sand from the bottom of the Sacramento river for the purpose of getting what gold there was out of it." He testified further: "We filed mining claims on the river and had them recorded. . . . . . This was all the mining property we had."

It is immaterial, if true, that the river bed where navigable was not subject to location as a mining claim; the company did mining there, or endeavored to do so, and expended money of the corporation in the effort; and the requirements of the law or the consequences of its violation cannot be evaded by showing that the company was wrongfully searching for gold in a navigable stream. We do not think this view of the statute extends it beyond its obvious purpose and intent, as is claimed in appellant's second point. We are but following a reasonable construction already given the act in many cases.

2. It is contended that the violation of the statute must be willful and intentional, and that no penalty can be incurred or imposed unless the breach be with express reference to violating its terms or with criminal intent. This it is claimed was so held in *Eyre v. Harmon,* 92 Cal. 580.

The language and meaning of the court upon the point, in the case cited, were to some extent explained in *Miles v. Woodward, supra,* in the opinion by Mr. Justice Henshaw. By reference to *Eyre v. Harmon, supra,* it will be seen that a statement of receipts and expenditures, duly verified, was posted, and it was admitted that this statement was a balance sheet, and that the statement was posted for the purpose of complying with the law and was in the form used ever since the passage of the act, and no stockholder had ever complained until that suit was brought. It was in view of these facts, the court said, that section 3 of the act "simply makes the directors liable, to the penalty named, for a willful failure to have such reports made and accounts posted as are referred to in section 1. If the directors cause the reports of the superintendent to be made, and the monthly accounts to be posted as required by the statute, the law is complied with; otherwise not, and they incur the statutory penalty if this failure to do so was intentional on their part."

It was said in *Schenck v. Bandmann,* 81 Cal. 231, where this question of intent was under discussion (and which case, it was said in *Miles v. Woodward, supra,* should be read with *Eyre v. Harmon, supra*): "It may be that under possible circumstances the directors of a corporation, when they have failed to comply strictly with the law, should be held excused"; giving an example where circumstances rendered compliance impossible; "but, if so, the facts must be within the knowledge of the directors who are sued and should be set forth and proved."

In the case before us, no attempt to comply with the law was made, and there is nothing to bring the appellants within the facts appearing in *Eyre v. Harmon, supra.* The only evidence offered excusing the admitted neglect and failure of defendants was by way of the following question put to one of the defendants as a witness: "What did you know about this mining statute that plaintiff now invokes?" The court, properly we think, sustained an objection to the question. The maxim, *"Ignorantia*

*legis neminem excusat,"* applies.   Where there has been an entire failure to comply with the law, the mere ignorance of the law constitutes no exculpation.   The act in question is not only penal in its nature, but it is also remedial and of much consequence and value to stockholders.   (*Eyre v. Harmon, supra; Shanklin v. Gray,* 111 Cal. 88.)   It must therefore receive a construction with reference to its beneficent objects as well as to its penal character.

3. The only remaining points found in appellants' brief are that the action was not brought in good faith, and that the court erred in excluding certain letters written by plaintiff which, it is claimed, would have shown that the motive of plaintiff in bringing the action "was solely to get even with the defendants for removing him from his berth of assistant superintendent."

(*a*) It may be true that plaintiff had knowledge, by reason of his connection with the company, of the accounts while he was in its employ, and that he had the means of learning about them after he was discharged by going to the books, but we think that such knowledge and means of knowledge would not excuse noncompliance with the law; there may have been other stockholders.   (*Shanklin v. Gray, supra.*)

(*b*) When defendants offered certain letters of plaintiff in evidence, counsel stated that his object was to "show that this whole proceeding was instituted by plaintiff out of revenge." The Court: "If you wish to show his animus you can do that as a witness.   You can question him as to his feelings toward the parties on cross-examination of him as a witness, simply, but not as a party.   If he have a cause of action—if he was suing on a note—it would not be competent to show that he had any difficulties with the defendants.   I will sustain the objection." The offer was not made for purposes of impeachment of the plaintiff as a witness or to contradict his testimony.   The avowed purpose of counsel was to show revenge or animus, and nothing more.   We see no error in the ruling.

The act of 1880 has been often challenged in this court.   Efforts have been made to emasculate it by construction; its constitutionality and reasonableness have been assailed, without success.   No doubt it has been used as an engine of malice and revenge.   Still its objects are wise and praiseworthy and tend to

the protection of stockholders of corporations. It was amended February 26, 1897 (Stats. 1897, p. 39), so as to confine its operation to corporations "whose stock is listed and offered for sale at public exchange," and also in certain cases to limit recovery to the damage actually sustained. The amendment, however, came too late to serve the defendants.

It is recommended that the judgment and order be affirmed.

Searls, C., and Belcher, C., concurred.

For the reasons given in the foregoing opinion the judgment and order are affirmed.

             .        Harrison, J., Garoutte, J., McFarland, J.

Hearing in Bank denied.