# CHARLESTON

### Reeves *v.* Ross.

Submitted January 23, 1907.   Decided April 17, 1907.

1. STATUTES—*Construction—General Rules—Relation to Other Statutes.*

   A statute, general in the sense of operativeness throughout the state, but limited in its purpose and object, and intended by the law making body to become effective as a part of the general system of law, relating to other subjects, will be so construed as to operate in harmony with such system, and not to contravene or infringe upon it, when the terms thereof, fairly and reasonably considered, will permit such construction.   (p. 8.)

2. SAME.

   In construing a statute, courts will presume that the law making body were cognizant of the general laws in force in the state and did not intend legislation, enacted for one purpose, to repeal, modify or impair general laws, relating to other subjects, unless the intention so to do is plainly apparent in the terms of the act. (p. 10.)

3. SAME—*Remedial and Penal Statutes.*

   Statutes, both remedial and penal in their provisions, will be liberally construed in so far as they are remedial, to the end that the relief which they are intended to afford may be had to the full extent thereof, and strictly construed in so far as they are penal.  Sections 24 and 25, Code of 1899, sections 1320 and 1321, Code of 1906, providing for exemption of personal property from forced sale, contain both remedial and penal provisions, and, in construing the same, the rules above stated, are applicable. (p. 11.)

4. SAME—*Protection of Rights—Penalty.*

   The penalty of five dollars a day, given against an officer, by said statute, for failure to release property which has been exempted, can be recovered for such time only as the officer withholds the property under process against the rightful claim of exemption. (p. 13.)

5. SAME.

   The provision for enforcing a release of exempted property was designed by the legislature only to defeat live process in the hands of the officer, as to exempt property, and thereby vindicate a right of the debtor which he cannot enforce by the ordinary legal remedies, and, when the process has become *functus officio,* no longer

protecting the officer in his possession, or the garnishee in his refusal to pay, since the debtor may invoke the ordinary legal remedies, against the officer or the garnishee for recovery of the property or debt, as the case may be, the penalty for failure to release ceases to accrue to him. (p. 13.)

Error to Circuit Court, McDowell County.

Action by the State, on the relation of John Reeves against J. H. Ross and others. From judgment in favor of plaintiff, defendant brings error.

*Reversed. Remanded.*

D. J. F. STROTHER, for plaintiffs in error.

G. J. HOLBROOK, for defendant in error.

POFFENBARGER, JUDGE:

John Reeves, as relator, instituted in the circuit court of McDowell county, an action of debt, in the name of the State against J. H. Ross, constable, and his sureties, for the recovery of the statutory penalty of $5.00 a day for failure, for the period of ninety days, to release exempted property, and obtained a verdict for the sum of $430.00, on which judgment was rendered. Assigning a number of errors relating, for the most part, to the admission and exclusion of evidence, and the sufficiency thereof to sustain the verdict, and practically all depending upon the construction of the statute, the defendants have brought the case here on a writ of error. The overruling of the demurrer to the declaration is assigned as error, but as the assignment is not insisted upon in the brief, it may be regarded as abandoned.

The record discloses, among other things, the following facts and proceedings: L. M. Hunt, on the 17th day of June, 1905, brought an action against Reeves before D. T. Coles, Justice of the Peace, and sued out an attachment which was placed in the hands of Ross, the constable. The Norfolk & Western Railway Company was indebted to Reeves in the sum of about $35.00, and a copy of the order of attachment was served on it as garnishee. On the 20th day of June, 1905, Reeves presented to the constable his list and claim of exemption, made out under the statute, (section 24 of chapter 41 of the Code,) and demanded a certificate of release of the money due him from the garnishee. Ross, claim-

ing to have returned the attachment and summons to the justice, refused to sign the certificate of release, but accepted the exemption list, saying he would deliver it to the justice and have him release the money. The defendant, by his testimony, proved the delivery by him to the justice of the exemption list and claim, and the promise of the justice to release the attachment. The transcript from the justice's docket introduced in evidence by the plaintiff shows that judgment was rendered in favor of Hunt against Reeves on the 24th day of June, 1905, the return day of the summons, for $29.95. As to the garnishment, the transcript shows no order made by the justice on that day or at any other time, directing payment by the garnishee to the plaintiff. On the contrary, it shows the following memorandum made by him:

"State of W. Va.   McDowell Co., to-wit:   The defendant Jerome Reese having filed a schedule, in the above case, after notifying the plaintiff L. M. Hunt, said attachment was released by me on or about June 24, 1905.   D. T. Coles, J. P."

On motion of the plaintiff, the court excluded this memorandum from the jury and also refused to allow the defendant to prove by Coles that, on or about the 24th day of June, 1905, he made said memorandum on his docket, thereby intending and attempting, to release the attachment, and that, at the time he received the exemption list and claim from the constable, the attachment had been returned by that officer. To all these rulings of the court, the defendant excepted. At the instance of the plaintiff, the court gave, over the objection of the defendants, the following instruction: "The Court instructs the jury that if they shall believe from the evidence in this case that the plaintiff's wages were attached in the hands of the Norfolk & Western Ry. Company by service of an attachment issued by D. T. Coles, Justice of the Peace, McDowell county, in favor of Luther Hunt on the 17th day of June, 1905; and that the defendant, J. H. Ross. as constable of McDowell county served said attachment on the said Norfolk & Western Ry. Co., and if they shall further believe from the evidence that after said attachment was so served the plaintiff delivered to said J. H. Ross as constable an exemption list claiming the

said money so attached in the hands of said Company and demanded of said constable a release of said attachment on his wages; that it was the duty of said constable to deliver to the plaintiff or his agent or attorney a written release of said attachment within 5 days after the delivery to him of the said exemption list, otherwise he is and his securities are liable on his official bond in the penalty of $5.00 per day from the expiration of said 5 days that said default may continue up to the institution of this suit." A motion to set aside the verdict was made and overruled and an exception to the action of the court in overruling it taken and saved.

Section 25 of chapter 41 of the Code provides that the list shall be delivered to the officer holding the execution, order of sale or other process and be by him annexed to and made a part of his return. Said section further provides as follows: "When an attachment or suggestion has been served on a person owing a claim or demand to the debtor which is by him exempted as aforesaid, the officer shall upon request, release such claim or demand by giving the debtor, his wife, agent or attorney, a written certificate of such exemption, which certificate shall be delivered to the person owing the claim or demand, who shall thereupon be entitled to pay the same to the debtor. And any officer who shall sell any property so claimed as exempt, after the provisions of the twenty-fourth section have been complied with by the debtor, his agent, attorney, or wife, shall forfeit to such debtor double the value of the property so sold, which forfeiture may be recovered from the officer and his sureties in his official bond in any court having jurisdiction in the case. And any officer failing to release any money or property in his control which shall have been exempted as aforesaid, or fail to deliver the same if in his possession, to the debtor, his agent, attorney, or wife, upon request, shall forfeit to the debtor five dollars for each day such failure may continue, which forfeiture may be recovered from the officer and his sureties in an action upon his official bond in any court having jurisdiction."

In respect to the extent to which recovery of the penalty imposed by this statute may be had, it has never been construed by this Court, nor has any decision been found in the

reports of any other state in which a similar statute has been so construed. It becomes necessary, therefore, to invoke general principles relating to the construction of statutes and ascertain, by means of them, what the legislature intended. It must be assumed that the law making body knew and had in mind the general system of law into which this statute was by it injected and that it was intended to operate in harmony therewith. The law, common and statutory, prescribes the powers and duties of the officers made liable under it, and sets limitations thereon. The constable and sheriff, the executing officers of the several courts, have certain functions to perform, and have certain responsibilities imposed upon them, and the courts for which they act have also their peculiar and appropriate provinces. The law carefully distinguishes the powers and duties of one class of officers from those of the other, and is careful not to impose liability upon one class for default or dereliction on the part of the other. In the case of administrative and executive court officers, some of their duties are to be performed before judgment, while others are required to be performed after judgment. An attachment placed in the hands of a constable or sheriff requires him to levy upon the property of the defendant before judgment, and, under some circumstances, to take the property out of the possession of the defendants. In the case of garnishment, the service of a copy of the attachment makes the garnishee liable to the plaintiff in the action for the money or the property of the defendant in his possession. The defendant's control of his property is then destroyed, for the time being, and he is deprived of the benefit and use of it, though it does not pass into the possession of the officer. When property of the defendant is taken into possession of the officer under an attachment and the debts due him are so impounded by garnishment, the officer holding the process is the only person to whom application can be made for a release; but there comes a time later when that officer's powers over the property cease. The process must be returned to the court or justice from which or whom it issued and, on a certain day fixed by the law in each case, the powers of the court attach and those of the sheriff or constable cease. This is not necessarily the return day of the process. It

may or may not be, according to circumstances. Property taken into possession of the officer under an attachment is none the less in his power and custody after the process has been returned, if the court is not then in a position to act judicially with reference to it; but when the case in which the attachment issued has been heard and judgment rendered and the attachment quashed, the authority and power of the sheriff under the attachment ceases. After that he has no right to retain or sell the property and it becomes his duty to return it. When the officer has not the possession of the property, but has merely impounded it by service of process in the hands of some other person, and judgment is rendered for the defendant respecting it, his power over it is likewise ended, but he has nothing in his hands to return to the possession of the defendant or the garnishee. Thus, it is plain that in either case there comes a time at which the sheriff's power and control over the property or fund ceases and determines. After that time his failure to release funds merely impounded by garnishment and not in his actual possession constitutes no bar to an action by the defendant against the garnishee for the recovery thereof. Nor, after dismissal of the attachment, is there anything to prevent the defendant from recovering from the officer himself the possession of property which he has actually taken under the process.

The object and purpose of this portion of the statute must also be observed. Having ordained that a certain class of debtors may exempt property, amounting in value to $200.00, from execution and other process, the legislature prescribed the mode of releasing property so exempted from the effect of such process. The right of exemption being purely statutory, an efficacious statutory remedy for its vindication became necessary and was provided. Against the ordinary processes of the courts in the hands of their officers, the legislature set up a new course of procedure by which it designed and intended that such processes should be defeated, and the exempted property wrested from their operation. It imposed upon the debtor the duty of making out a list of his property, showing the amount and character thereof in detail and in the aggregate, and another list designating the parts thereof which he desires to exempt, when

the aggregate value of his property exceeds $200.00. This he is required to deliver to the officer holding the process and that officer is required, after five days allowed for an appraisement, to release the property, if he has it in his possession, and, if he does not have it in his possession, but has merely impounded it in the hands of the garnishee, he is required to release it by giving the debtor a certificate showing that the fund or property in the hands of the garnishee has been exempted. No other mode of releasing exempted property from the operation and effect of process in the hands of an executive court officer is prescribed. As a guaranty of due performance of duty by the officer having such process, the penalty of five dollars a day for refusing to release is imposed upon him. When that process has run its course and has become *functus officio*, it no longer bars the ordinary remedies for the recovery of the property and the special remedy devised by the legislature to defeat court process is no longer needed. To illustrate, where process under which property has been taken or impounded in the hands of a garnishee, has been returned and the court has adjudicated the property to be exempt, and refused to order the garnishee to pay it over to the plaintiff, or determined that the property in the hands of the officer is not liable to sale for satisfaction of the plaintiff's debt, the garnishee is no longer absolved from payment nor protected from an action by the defendant, nor has the officer any warrant for further detention of the property. The courts are open to the defendant for procedure against the garnishee or the officer, as the case may be, in any appropriate form of action. If, on the other hand, property in the possession of the officer under an attachment is adjudged to be sold, the officer acts under a new authority, a new process, namely, the order of sale, and, to defeat the operation thereof, the debtor would be entitled to assert the statutory remedy, including the imposition of penalties. "Order of sale" is specially mentioned as process in section 25 of chapter 41 of the Code.

As has been indicated, there is a point in the course of all such proceedings at which the power, authority and jurisdiction of the court breaks in upon and interrupts that of the executive officer. At the moment of adjudication the force and

effect of the preliminary process under which the property was taken, is arrested and either ceases or is transformed into a new process, the order of sale or the order to pay over. At this point, the court has the power to determine and adjudge that the property is not liable to sale or application to the debt of the defendant. The statute requires the officer to return with the process the exemption list and claim. They must be made parts of his return so that, when the court comes to consider the attached property, claims and demands, the debtor's right of exemption will appear and be protected by an adjudication. It would be the duty of the court, seeing a valid and unobjectionable claim of exemption, to refuse an order of sale or an order requiring the garnishee to pay over the funds in his hands to the plaintiff. For this position, there is warrant in the language of the statute which says that upon delivery of the list to the officer " the property therein specified shall be exempt from levy and sale." The certificate which the statute requires him to give to the debtor does not effect the redemption. It merely certifies the fact of redemption which was accomplished by delivery of the property list and claim. Section 197 of chapter 50 of the Code says the effect of service upon the garnishee of the order of attachment shall make him liable to the plaintiff, not for all property that he may have in his hands belonging to the plaintiff, but "for whatever personal property of the defendant, not exempt by law from execution or other process was in his possession or control, when the levy was made." Sections 120 and 121, relating to suggestions on judgments, make it still clearer that the court must take notice of the claim of exemption returned with the process. Like the attachment statute, the suggestion statute makes the creditor of the judgment debtor liable to the plaintiff only for money not exempt from the lien of an execution and then says: " Provided, Such effects, or the sum of money for which any such person is so liable, shall not be liable to the judgment creditor if the judgment debtor shall show to the satisfaction of the justice that he is a husband or parent and is a resident of the State, and that his personal estate, including such effects and money does not exceed two hundred dollars." The attachment statute does not contain this provision, but reason for

its omission is found in the requirement that the officer return with the attachment the claim of exemption filed with him. As in the case of an attachment, the officer makes the exemption list a part of his return, there is no necessity for a plea of exemption by the debtor.

Some disposition is always made of every case. The law does not contemplate, nor can it be assumed that the legislature contemplated, an instance of perpetual holding of property or effects under process. There is always, within a reasonable time, an order to pay over funds held in garnishment or an order releasing them, and in the case of tangible property, taken under an attachment, there is always a release or a sale. If, in the latter case, a constable or sheriff should fail to release, and a sale under an order of a justice should follow, there is no longer a detention of the property. It does not remain in the hands of the officer. He then becomes liable under the statute for double the value of the property sold, and if the accrual of the daily penalty does not stop with the sale, it must go on perpetually. If, in the case of an execution, property be taken and the officer fail to release, it is not to be assumed that he will forever hold the property. Both the mandate and the presumption of the law is that he shall and will sell it and the legislature must have contemplated this. Hence it is clear, that even in this case, no perpetual accumulation of the daily penalty of five dollars was intended. Since there can be no conceivable case of a perpetual withholding of property under process, it seems clear that the legislature did not contemplate a perpetual accumulation of daily penalties, and that there must somewhere be a limit. The matter of difficulty in the case is to determine the point of limitation. If we adopt the view that the legislature intended to limit the accrual of penalties to the period during which the property is held under process, in the legal sense of the terms, we adopt a view that seems to be in strict harmony with both the letter and the spirit of the statute. In most instances, the amount which may be recovered under this clause of the statute will be small, for generally such proceedings are ended within a few days; but it is not to be presumed that the legislature intended extremely heavy recoveries for mere detention of the property, against the

claim of exemption.  It is rather to be presumed that only a reasonable amount shall be recovered, an amount commensurate with the injury done.  There are instances, however, in which the time, intervening between the taking or impounding of the property and the disposition of the case by the court, is quite considerable and would give the right to a large recovery.  This view is rather enforced or upheld by the provision made for the case of sale of exempted property.  The debtor is allowed to recover only double the value of the property,  Can [the mere detention of it be more injurious to him than the sale thereof?  To allow recovery for accrual of the five dollars penalty for detention, without limit as to time, would enable the debtor, in many cases, as in this, to obtain many times the value of the property.  This view would impute to the legislature an intention to do not only an inconsistent, but an extremely harsh and unreasonable, thing.

In reaching this conclusion, the rule of strict construction has been followed, but, as the portion of the statute with which we are dealing is penal, this rule is applicable.  According to all authorities, penal statutes are to be strictly construed.  The penalty is never imposed, unless the act, for which its infliction is attempted, is within both the spirit and the letter of the statute, and we have shown that the legislative design is to defeat process.  After the process is dead or has expired, and no longer stands in the way of the ordinary remedies, the case has passed beyond the spirit of the statute.  In Lewis' Suth. Stat. Cons., Second Edition, at section 526, it is said:  "A penal statute should be construed to carry out the obvious intention of the legislature, and be confined to that.  Every case must come not only within its letter, but within its spirit and purpose; but it should be given a rational construction."  An illustration of the application of this principle is found in *State* v. *Lovell*, 23 Ia. 304.  The statute made it a penal offense to resist an officer in serving or attempting to execute any legal writ, rule, order of process whatever.  The defendant had resisted an officer who was attempting to arrest, without any warrant, writ or process or any kind, a person who was breaking the peace.  On an indictment for this alleged offense, it was held that the case was not within the statute.  Neither its lan-

guage nor its spirit was broad enough to cover it. Judge
Dillon said: "But the section above quoted does not em-
brace such a case. It is probably a *casus omissus* which the
legislature may, but the courts cannot, supply." That was
a criminal statute, but the same rule applies in cases in which
the penalty is given to private persons by way of redress
for an injury done. In Alabama, a statute gave a penalty
of two hundred dollars to the mortgagor for the failure of
a mortgagee to cancel a mortgage which had been fully paid.
The mortgage had been assigned and fully satisfied by the
mortgagor by payment to the assignee. The latter failed to
enter satisfaction upon the record, and the mortgagor
brought an action against him to recover the penalty, but
the court said the statute was highly penal and must be
strictly construed. Hence, it did not authorize the institu-
tion of a suit against the transferee of the mortgage. Nor
does it signify anything that the penalty constitutes part of
a remedial statute which, as a whole, must be liberally con-
strued for the accomplishment of its purpose. The courts
have adopted the sensible proposition that, in so far as the
statute is remedial, it is to be liberally construed for the ad-
vancement of the remedy, but strictly construed, in so far
as it is penal. "Statutes which provide a penalty recovera-
ble by the party aggrieved are remedial as well as penal.
Hence two diverse principles have some application; that of
requiring strict construction on account of the penalty, and
that of liberal construction to prevent the mischief and ad-
vance the remedy. Where a penalty, like double damages
or any other form of pecuniary mulct recoverable by the
party injured, is the only remedial instrumentality, the act
as to that party is remedial only in the same sense that all
punitory laws are so—for the benefit of the public at large.
The courts look with no favor upon the penalty, but incline
against it. They will only permit it to be recovered upon
a case which falls both within the letter and the spirit of the
act." Lewis' Suth. Stat. Cons. section 532. The text just
quoted is fully sustained by the following decisions: *Ren-
froe* v. *Colquitt*, 74 Ga. 618; *Bank* v. *Dearing*, 91 U. S. 29;
*Abbott* v. *Wood*, 22 Me. 541; *Ordway* v. *Bank*, 47 Md. 217;
*Eyre* v. *Harmon*, 92 Cal. 580; *Smith* v. *Townsend*, 148 U. S.

490.   The rule is stated in 1 Blackstone's Commentaries 88, as follows:   "Statutes against frauds are to be liberally and beneficially expounded.   This may seem a contradiction to the last rule, most statutes against frauds being in their consequences penal.   But this difference is here to be taken; where the statute acts upon the offender, and inflicts a penalty, as the pillory or a fine, it is then to be taken strictly, but when the statute acts upon the offence, by setting aside the fraudulent transaction, here it is to be construed liberally."

If the defendant can show, as he proposed to do, that the justice regarded the exemption list as valid, and, after notifying the plaintiff of the filing of the same with him, released the money in the hands of the garnishee, the plaintiff could recover the penalty of five dollars a day only to the date of such release.   After that day, the constable had no process in his hands and was not in any sense in control of the fund. The garnishee was not thereafter protected in withholding from him his money and the courts were open to him to sue for it, if he desired to do so.   On such issue, the memorandum on the justice's docket and the oral testimony are admissible evidence and should not have been excluded,

It follows that the court erred in excluding the evidence of Coles to the effect that he had released the fund in the hands of the garnishee, that the exemption list, as well as the process, had been returned to him, and that he had sent the release to Reeves.   As to this last, it was not shown that Coles would testify to his having sent a release to Reeves, and, if this alone were relied upon as error, it would not be sufficient, for, under a well settled rule, an exception to a ruling, excluding evidence, must show what the party intended to prove, and that the witness was expected to testify to it.   The court further erred in striking from the justice's transcript the memorandum hereinbefore quoted.   It is also manifest that the court erred in giving the instruction complained of.   Exceptions were taken to the action of the court in admitting, as evidence, the certified copy of the constable's bond, the justice's transcript, the testimony of Reeves and the exemption list.   These exceptions are all based on the theory that, in view of facts disclosed by the plaintiff's

evidence, there could be no recovery at all.  As this position is not maintainable, for reasons already stated, all these exceptions fall with it.

For the errors herein noted, the judgment will be reversed, the verdict set aside and the case remanded for a new trial.

*Reversed.  Remanded.*