# CHARLESTON.

## STATE v. LEONARD KINNEY.

Submitted October 31, 1922.    Decided November 14, 1922.

WEAPONS—*Buyer of Pistol Who Stopped at Garage on Way From Store to Home, and in Good Faith Loaded Pistol and Fired Shots to Try its Shooting Qualities, Held Not Guilty of Unlawfully Carrying a Pistol.*

Upon a trial on an indictment for unlawfully carrying a pistol, where it appears that the pistol was carried by defendant in his automobile from the place of purchase to his garage located within 35 or 40 yards of his dwelling, (not on the same lot with his dwelling), where he left his car, and then loaded his pistol and fired three or four shots into the floor of the garage to try its shooting qualities, and immediately carried it unloaded along the traveled way to his dwelling, and it appears that the pistol was so purchased, carried and fired in good faith and not for an unlawful purpose; it is error to instruct the jury to find defendant guilty.

Error to Circuit Court, Logan County.

Leonard Kinney was convicted of unlawfully carrying a pistol, and he brings error.

*Reversed and remanded.*

*Ira P. Hager,* for plaintiff in error.

*E. T. England,* Attorney General and *R. Dennis Steed,* Assistant Attorney General, for the State.

LIVELY, JUDGE:

There is no controversy over the facts.

Defendant, on the morning of December 10, 1921, purchased a pistol at a hardware store in the town of Logan,

carried it in his automobile a direct route towards his home a short distance away, and stopped at his garage 35 or 40 yards from his dwelling house, in which he left his car. While in the garage he loaded the pistol and fired it three or four times in the floor, emptying it of the loads, and from there carried it, unloaded, in his hand, over the intervening space, which did not belong to him and over which he had no control, and by two small dwellings, to his own dwelling which he entered, and going to the rear, again loaded it and fired two or three shots in the back yard. A short time thereafter he was arrested, tried before a justice of the peace for carrying a pistol without a license, found guilty, appealed to the circuit court where he was again found guilty by a jury. On July 16, 1921, the court fined him $50 and sentenced him to confinement in jail for six months, and he obtained this writ of error.

The court instructed the jury that defendant had no right to stop at any other place except his home to load and shoot the pistol; and if they believed from the evidence that on his way home, and before arriving there, he loaded the pistol and carried it about his person loaded, at any other place than his home, they should find him guilty. The court further instructed, ''that a garage on a different lot from the place of a man's home, is not his home,'' and if they believed from the evidence ''that defendant stopped at his garage, and that same was located on a lot other than that on which his home was located and before he reached his home, and loaded the pistol, then they should find him guilty.'' The court practically instructed the jury to return a verdict of guilty. The action of the court in so doing is the main error relied upon. Sec. 7 of chap. 148, Code, provides: ''If any person, without a state license therefor, carry about his person any revolver or any other pistol * * * he shall be guilty of a misdemeanor * * * * * Provided that nothing herein shall prevent any person from carrying any such weapon, in good faith, and not for a felonious purpose, upon his own premises, nor shall anything herein prevent a person from carrying any such weapon (and if it be a re-

volver or other pistol unloaded) from the place of purchase to his home or place of residence.''

The attorney general insists that while defendant was authorized by the proviso in the statute to carry the pistol from place of purchase to his home, yet when he loaded and fired it in his garage the continuity of his journey home was broken, and the subsequent carrying it from the garage over the 35 or 40 yards intevening between the garage and his dwelling, over premises not his own, made him liable under the statute. The right to have the pistol on his own premises (his garage), in good faith, and to load and shoot it there is conceded; but the argument is that this cannot be lawfully done while the pistol is being carried from place of purchase to the home, because on the journey home it must not be loaded. This construction of the statute is rather strained, and violates the rule that a legislative enactment must be considered in its entirety and every word or phrase given some significance. Nor do we see much force in the argument that the continuity of the journey home was broken. Stopping a few moments at the garage to leave the car, would be no more of a break in the journey than stopping at a spring or pump to get water to drink or for use of the car, or stopping to repair a puncture in a tire, or for some other necessary purpose. It may be conceded that loading and shooting the pistol while on the journey home from a place of purchase would be a violation if done on the public road, or at some place not on the premises of defendant. The statute permits a person to carry a pistol in good faith and not for a felonious purpose on his own premises, and the carrying of this revolver in the garage and its innocent use there would not be a violation. The court, by its instruction, held this act of loading to be a violation, not because the pistol was loaded and fired in the garage, but because it was loaded and fired while on the journey from the place of purchase to the home, ignoring the right to carry the weapon in good faith on his own premises. Stated another way, the carrying of the pistol into the garage and thence by hand (unloaded) to the dwelling house would not be a violation of the statute,

no break in the continuity of the journey; but the loading and firing of the pistol in the garage, constitutes the offense, thus taking the case out of the proviso of the statute. This view of the statute segregates the right under the proviso to carry the weapon from place of purchase to the home, from the right to carry the same upon his own premises, and denies any influence of one upon the other. While in the garage he was not carrying the pistol within the meaning of the statute which requires it to be unloaded when carrying it home. That provision was designed to take from the weapon its possibility as an instrument of offensive or defensive combat while the purchaser was on premises not his own; such as the highway as other place where other persons had the right to be. Properly construed, we think the statute makes a clear distinction between carrying a pistol under such circumstances on the public road or other public or private place, and on premises of defendant where other persons have no right to be. Statutes of this character are designed to suppress the habit of going around armed ready for offense or defense in case of conflict with another, and it is necessary to an offense under such statutes that there exists all of the elements as prescribed by the statute properly construed, *Lewis* v. *State,* 2 Tex. App. 26. Was the journey home complete when the garage was reached? Did the use of the pistol by trying it out in the garage, complete the journey and make defendant amenable to punishment because he then carried it unloaded, 35 or 40 yards over ground not his own to his residence? We do not think the statute can be so construed. We do not mean that if the pistol had been deposited in the garage for use there and left for any considerable length of time, defendant could then carry it to his residence and be immune under the statute. Nor do we hold that defendant could carry his pistol from his residence to his garage and thence back to his dwelling across the intervening space, thus using the same pistol on both premises, and escape the penalty of the statute. *Chambers* v. *State* 34 Tex. Crim. Repts. 293; *Banks* v. *State* (Tex.), 98 S. W. 242. In these

two cases cited it was held that the carrying of a pistol from residence to place of business; and carrying pistol from rented premises on a farm to other rented portions of the same farm, were violations under the Texas statute. The attorney general relies upon *State* v. *Hunter,* 37 W. Va. 744, to sustain the proposition that the stopping at the garage was a break in the continuity of the journey home. The pistol in that case was sold to defendant on December 24th. He did not go home that day, but went to the home of Marion Ferrell. On the following day at a store about one-half mile distant from Ferrell's house, defendant exhibited the pistol to prosecuting witness. The court decided that when Hunter exhibited the pistol the day after the purchase he¹ was not carrying it from the place of purchase to his residence within the meaning of the statute. The facts here are very dissimilar. The journey was direct from place of purchase to the home. Placing the car in the garage was a natural incident of the trip, consuming only a few moments, and cannot be considered as a break in the journey, or deviation from the direct route. There was no change of purpose, no appreciable loss of time. And when we consider that defendant had the right to carry the pistol on his own premises in good faith and not for a felonious purpose, that he loaded and fired it in the garage for the innocent purpose of "trying it out," and that he immediately thereafter carried it unloaded a few yards away to his home, we think it would be overtechnical and unreasonable to hold that he had violated that part of the statute which requires the revolver to be unloaded while it is being carried home from the place of purchase. The rigid enforcement of the statute against carrying dangerous weapons should not be relaxed, and it is not our purpose to do so; but it should receive such construction and enforcement as will carry out its true purpose and punish those offenders who come within its letter and spirit.

Under the peculiar uncontroverted facts here shown we think it was error to instruct the jury to find defendant

guilty as charged. The judgment will be reversed, the verdict set aside and a new trial awarded.

*Reversed and remanded.*