# CHARLESTON.

STATE ex rel. C. H. MIDDLECAMP, ADMR. v. W. W. HAZELETT
et al.

Submitted May 15, 1923.    Decided September 18, 1923.

1. DEATH—*Accidental Killing by Discharge of Pistol Carried by*
   *Railway Conductor Under License Held Actionable.*

   The administrator of one killed by the accidental discharge
   of a pistol may maintain an action on the bond of a railway
   conductor licensed to carry such pistol pursuant to section
   31 of chapter 145 of the Code and section 7 of chapter 148 of
   the Code, for the use and benefit of the distributees of the
   estate of the decedent.    (p. 441).

2. WEAPONS—*Liability on Bond of Railway Conductor Carrying*
   *Pistol Held to Extend to Temporary Stay in Hotel.*

   And the statute relating thereto properly construed, extends
   the condition of such bond and the liabilities of the railway
   conductor thereunder to the room in the boarding house or
   hotel where he spends the night while absent from his home
   and place of residence in the discharge of his duties as such
   railway conductor.    (p. 440).

Error to Circuit Court, Kanawha County.

Action by the State, on the relation of C. H. Middlecamp,
administrator, against W. W. Hazelett and others.    Judg-
ment for plaintiff and defendants bring error.

*Affirmed.*

*John M. McGrath* and *John R. Pendleton,* for plaintiffs in
error.

*Grover C. "Worrell* and *James Damron,* for defendant in
error.

MILLER, PRESIDENT:

In an action of covenant on the bond of defendant Haze-
lett as principal and the United States Fidelity and Guaranty
Company as surety, plaintiff obtained a verdict and judgment
for $3,500.00, the full penalty of the bond sued on.

Numerous errors in the judgment are assigned and relied on
for reversal.    The first is that the circuit court should have
sustained defendants' demurrer to the declaration.    Its ma-

terial averments are that defendants by said writing obligatory acknowledged themselves to be held and firmly bound to the State of West Virginia in the sum of $3,500.00, with the express condition that said W. W. Hazelett would not carry about his person the pistol which on his application he had been authorized by the Circuit Court of Mercer County, West Virginia, to carry for a period of one year beginning August 12, 1920, except in accordance with his application and as authorized by said court, and would pay all costs and damages accruing to any one by the accidental, improper, negligent or illegal discharge or use of said weapon; that after making and delivery of said bond, said Hazelett did carry said weapon about his person, but not in accordance with his application and as authorized by the circuit court, and did not pay all costs and damages accruing to any one by the accidental, improper, negligent or illegal discharge or use thereof; but on the contrary, and for assigning a breach of the condition of said bond, the declaration further avers that on the ———— day of April, 1921, said Hazelett, in the county of Wyoming, in said state, armed himself with a certain revolver pistol and carried the same about his person, and while so armed, and by the accidental, improper, negligent and illegal discharge and use thereof, did on said day kill, slay and murder one J. C. Middlecamp; and that since then neither he nor his surety, nor any one for them, has paid the said sum of $3,500.00, or any part thereof, according to the tenor and effect of said writing obligatory, and still fail and refuse to do so, to the damage of said plaintiff in the sum of $3,500.00.

The declaration further alleges that the plaintiff had theretofore qualified as administrator of the estate of said J. C. Middlecamp, deceased, and given bond as such administrator; whereby an action had accrued to him to have and demand of said defendants, by reason of said wrongs and injuries therein mentioned, damages to the amount of $3,500.00; wherefore he sues, etc.

While as alleged the said license was issued to said Hazelett upon his petition, it is not averred upon what ground or for what purpose the same was applied for, except the allegation that it was issued as prayed for in said petition. The averment is that the license was granted for the purpose of

carrying a revolver or pistol in pursuance of chapter 148 of the Code, the general statute providing for licensing persons to carry pistols; and it is also averred that the license authorized him to carry about his person a revolver, pistol or other deadly weapon within the limits of the State of West Virginia, for a period of one year beginning on the 12th day of August, 1920, as aforesaid; so that the questions sought to be raised on demurrer and presented on the trial before the court and jury, whether Hazelett's application was made on the ground that he was a railway conductor, pursuant to the provisions of section 31 of chapter 145 of the Code, and whether his powers and liabilities of a conservator of the peace were limited solely to the time he was actually in charge of his car or train, and whether at the time of the accidental discharge of his pistol which resulted in the death of plaintiff's decedent he was carrying said pistol in accordance with said application or was handling the same on his own premises or in his residence where no license was required of him and to which place the condition of the bond did not extend, are questions which were not presented by the demurrer.

One question presented perhaps is whether an action of covenant on the bond pleaded accrued to the administrator of decedent. Section 31 of chapter 145 of the Code authorizes a railway conductor to obtain a license to carry a revolver or pistol in the manner provided in chapter 51 of the acts of 1909, now section 7, chapter 148 of the Code, which relates to the obtaining of such licenses by public officers and other persons generally, and renders the licensee liable on his bond for damages accruing to any one by the wrongful or careless use of any such weapon. The statute does not otherwise designate the person or persons in whose name the action on such bond may be prosecuted, except to give such right to any one damaged thereby. And the question is thus presented, whether the administrator of one killed in the manner contemplated by the statute can maintain an ex contractu action on the bond for the use and benefit of the widow and heirs or distributees of such decedent.

If this were an action against Hazelett alone, there would probably be no question made in regard to the right of ac-

tion by the administrator, for sections 5 and 6 of chapter 103 of the Code give such right to the administrator, and section 6 provides that the amount recovered in such an action shall be distributed to the parties and in the proportion provided by law in relation to the distribution of personal estate left by the person dying intestate, the same not to be subject to any debts or liabilities of the deceased. And in the case of *Lester* v. *Trail,* 85 W. Va. 386, we decided that a municipal police officer was liable on his bond whether at the particular time of the injury complained of he was on duty or not.

Inasmuch as it does not appear from the face of the declaration whether the principal in the bond was a railway conductor or a police officer, and inasmuch as the right of action is given to the administrator for the benefit of the distributees of one killed, as recited in the condition of the bond, it would seem that the demurrer would not be well founded on the right of the administrator to bring the suit.

The other errors urged are presented by the refusal of the court, to direct on motion of defendants a verdict for them, the giving of two instructions for plaintiff, the refusal of the court to give two instructions for defendants, and the overruling of the motion to set aside the verdict and grant defendants a new trial. The correctness of these rulings, of course, depends on the facts adduced on the trial.

In addition to the bond introduced in evidence, it was shown that defendant Hazelett applied by petition to the circuit court for a license to carry a pistol or revolver as a railway conductor while in the discharge of his duties and while in charge of the car or train conducted by him; and the condition of the bond sued on was that he would not carry such weapon except in accordance with his application and as authorized by the circuit court.

The evidence shows that the shooting occurred accidentally while Hazelett was handling his pistol in his room at the boarding house or hotel where he was accustomed to spend his nights at the end of his run, and at the close of a social game of poker. It was also shown that by an agreement between the proprietor of the hotel or boarding house and the railway company by whom Hazelett was employed, trainmen were to be entertained there at the rate of thirty cents

per day for rooms and forty cents for each meal; that Hazelett was accustomed to pay his room rent every two weeks, and for his meals every day as they were served, and that generally he retained the key to his room unless he was to be absent for some time, when the proprietor was privileged to assign others to occupy the room. It is argued that there is no evidence that Hazelett ever carried his pistol on his train, or exercised any rights under the license. He had the pistol at his room in the hotel, and as he obtained a license to carry it, we think it may be assumed that he was carrying it pursuant to his license.

Two questions thus presented are: First, whether the condition of the bond covered the injuries complained of; and, second, whether the administrator of decedent was authorized to sue.

If properly construed the statute extended the duties and obligations of Hazelett to the room in the hotel or boarding house where he lodged at night, then it would seem that the conditions of his bond were broken by the careless and negligent handling of the pistol at that place, although not then on his car or in charge of his train. Necessarily a conductor so authorized to carry a deadly weapon would not be limited in his right or obligation to the time he was actually on his car or train. A reasonable time would have to be granted for his going to and coming from his train at both ends of his run, for taking his meals, and for his rest at night. It would not be within the proper rules of construction to hold him guilty of a violation of the statute while so carrying his pistol. Of course, if the room in his boarding house or hotel was his home or premises, like any other citizen, he would have the right to have a pistol in his possession there. *State v. Kinney*, 92 W. Va. 272, 114 S. E. 677. The evidence shows that the residence of Hazelett, where he kept and maintained his family, was at Princeton in Mercer County, and that his run was between Elmore in Wyoming County, where the shooting occurred, and the town of Mullens in the same county, and that he visited his family about once a month. He had no property of his own except clothing in his room at Elmore.

In our opinion this room so occupied was not the home or

residence of Hazelett, and that the condition of the bond
must be regarded as covering the injuries alleged and proven
to have accrued. This room can not be regarded as the resi-
dence or castle of Hazelett, and where he would have a right
to bear arms for his protection. He was away from home,
occupying a room in a hotel, under a contract between the
hotel proprietor and the railway company by which he was
employed; and we are cited to no authorities sustaining the
proposition that a room occupied in this way should be re-
garded as the premises or residence of the occupant.

The most troublesome question is as to the right of the
administrator to maintain the suit. As suggested, if this
were an action under sections 5 and 6 of chapter 103 of the
Code, our Lord Campbell's act, there could be no question
as to the right of action by the administrator. By that
statute, the action which would have accrued to the deceased,
if death had not ensued, is made to survive to the administra-
tor for the benefit of the distributees of the estate as the per-
sons injured. In the case of the City of Charleston, for the
use of *Peck, Admr.,* v. *Dawson et al.,* 85 W. Va. 353, and 90
W. Va. 150, the action was by the administrator on a pistol
bond, but his right to sue does not seem to have been there
directly raised or decided, but rather to have been conceded.
Section 1, chapter 10 of the Code, relating to official bonds,
says that unless otherwise provided, they shall be made pay-
able to the State of West Virginia. The bond of defendant
Hazelett was given by him as a conservator of the peace, with
authority given him by statute to exercise the powers of a
police officer. Though perhaps not strictly an official bond,
the bond given by him related to his duties as a police officer,
and must be regarded at least as a quasi-official bond. As re-
quired by section 1 of chapter 10 of the Code, the bond was
made payable to the State of West Virginia. Section 2 of said
chapter provides that suit upon any such bond may be prose-
cuted in the name of the State of West Virginia for the bene-
fit of the State, or of any county, district, or corporation or
person injured by a breach of the condition of such bond,
until damages are recovered in the aggregate equal to the
penalty thereof.

As the beneficiaries of this action are the same as those

named in sections 5 and 6 of chapter 103 of the Code, namely, the distributees of the estate of the decedent, the question as to the nominal plaintiff or relator is unimportant. It involves a mere rule of practice. The action is in no sense personal to the administrator, and the statute giving the right of action on the penal bond not specifically providing what form this action shall take, we think that the provisions of sections 5 and 6 of chapter 103 of the Code may be properly followed by analogy. The surety, it is said, has the right to stand on the letter of his bond. Statutes of this kind are sometimes said to be remedial as well as penal; and while they are strictly construed as far as penal, they are liberally construed as far as they are remedial in nature. *Reeves* v. *Ross*, 62 W. Va. 7-17. A judgment in favor of the administrator would be conclusive of the rights of the distributees, we think, suing thereafter individually or collectively on the bond.

Our conclusion is that the errors assigned are not well founded, and that the judgment should be affirmed.

*Judgment affirmed.*