# CHARLESTON.

STATE *ex rel.* BOARD OF EDUCATION v. CAVENDISH.

Submitted October 23, 1917.   Decided November 6, 1917.

MANDAMUS—*Parties—Board of Education.*

> The board of education is a proper relator in a mandamus proceeding to compel the financial secretary to countersign drafts issued by it upon the sheriff for the salary of teachers employed in its district.

(POFFENBARGER, JUDGE, concurring.)

Mandamus by the Board of Education of Kanawha District, Fayette County, against J. W. Cavendish, County Superintendent and ex-Officio Financial Secretary.

*Writ refused.*

*Dillon & Nuckolls* and *George Love,* for petitioner.

*M. G. McClung* and *Osenton & Horan,* for respondent.

WILLIAMS, JUDGE:

The Board of Education of Kanawha District, Fayette county, applies to this court for a writ of mandamus to compel J. W. Cavendish, county superintendent of said county and ex officio financial secretary, to countersign certain enumerated drafts for the pay of school teachers employed to teach school in said district, issued by said board and signed by J. P. Kincaid as its president and by M. E. Kincaid as its secretary.

The right of said board of education, as relator, to maintain this proceeding is challenged by demurrer to the alternative writ, but concerning such right there is no doubt. It is well established by the decisions of this court and the highest courts of other states, that public officers, or boards of officers, may maintain proceedings in mandamus to compel other officers to perform ministerial acts, which come within the scope of their supervision or which are necessary to be performed in order to enable such officer or board to perform its own duties. *State ex rel. Wayne County Court* v. *Her-*

*rald, Commissioner*, 36 W. Va. 721; *Cole, Adm'r.* v. *State ex rel. Hopper, Trustee*, 131 Ind. 591; *Pearson* v. *Ranlett*, 110 Mass. 118; *Obrien* v. *Board of Alderman*, 18 R. I. 113; *State ex rel Wolfe* v. *Bronson et·al.*, 115 Mo. 271; and 13 Encyc. Pl. & Pr. 627. The board of education had supervision of the schools in its district, and was, therefore, interested in having the salaries of teachers paid; and the signature of the financial secretary was a prerequisite to the payment of the drafts drawn in their favor by the board of education upon the sheriff, who is the treasurer. Sec. 138, Ch. 45, Barnes' Code.

In his return respondent avers he performed the act commanded by the alternative writ before it was served on him. But he did not do it in the manner required. He did not countersign the orders until he had first procured the signature thereto of C. P. Dent, a rival claimant to the office of president of the board of education, who had not, apparently, been present at any of the board's meetings and consequently could not have known officially whether the drafts had been properly issued or not. Respondent knew J. P. Kincaid was the acting president of the board and was, therefore, its *de facto* if not its *de jure* president, and presided over the meetings at which the drafts were issued. Knowing this it was his duty to countersign them, provided they were otherwise regular and lawful, and there is no intimation they were not. It appears from an affidavit filed in the proceedings that he procured said Dent's signature to the drafts, after he had been requested to accept service of the alternative writ. He declined to accept service of it and thereafter, and before the writ was served on him by the sheriff, carried the drafts from Fayetteville to the town of Montgomery where Dent resided and induced him to sign them. It further appears, by the return, that the sheriff immediately indorsed the orders for payment and mailed them to the several payees, except one who was in the military service and whose address was not known.

Strict compliance with the writ required respondent to countersign the drafts as they were when the writ issued, but he has now put it beyond his power to perform strictly

its command, and, hence, to make it peremptory would be nugatory.

It has not been a rule of this court to adjudge costs against a public officer, proceeded against in mandamus, who is honestly and in good faith endeavoring to perform his duty as he conceives it to be, but respondent's attempted evasion of the court's process in this instance was ill advised and affords just cause for departing from the rule and adjudging that he pay the costs of this proceeding and it will be so ordered, and the writ will be refused.

POFFENBARGER, JUDGE, *(concurring):*

Judge RITZ and I would go further and award a rule against the respondent, to show cause why he should not be punished for contempt. On its face, his return discloses contumacious conduct. The court finds and holds that he has disobeyed its writ and put it out of his power to obey it. Unless he can excuse this conduct, on some ground not apparent to us, he ought to be punished. A court ought not to allow its process to be evaded and trifled with. It is its duty to require those against whom it has occasion to award writs, to respect its authority to the extent of obedience, at least. Of course, the award of costs against him punishes, but it does not carry any implication of guilt of contempt. Unless purged in some way, the contempt ought to be adjudged and entered of record and punishment inflicted for the offense, under its proper designation, to the end that he and others may know they cannot indulge in such conduct, with impunity.

*Writ refused.*