STATE *ex rel.* C. H. KOONTZ
*As State Tax Commissioner*

*v.*

THE BOARD OF PARK COMMISSIONERS
OF THE CITY OF HUNTINGTON, *et al.*

(No. 9992)

Submitted April 6, 1948. Decided April 27, 1948.

*Ira J. Partlow*, Attorney General, and *Robert L. Ramsay*, Assistant Attorney General, for plaintiff in error.

*Scherr, Meek & Vinson* and *Harry Scherr*, for defendants in error.

HAYMOND, JUDGE:

The controlling question which arises on this writ of error is whether a statute of this State, which requires the annual publication of a financial statement by every municipal corporation, applies to the defendants the board of park commissioners of the City of Huntington and its members. The Circuit Court of Cabell County, in which this litigation was begun by the State at the relation of the State Tax Commissioner, after sustaining the demurrer of the defendants to the original petition, heard the proceeding upon the amended petition of the relator and the answer of the defendants, held that the statute, Code, 1931, 8-7-7, did not apply to the defendants and, by final order entered August 2, 1947, dismissed the petitions and awarded costs against the relator. This writ of error followed.

The material facts are undisputed and the matters involved present a purely legal question.

The relator contends: (1) That the defendant, the board of park commissioners of the City of Huntington, is a municipal corporation; and (2) that, being a corporation of that type, it is subject to the provisions of Section 7, Article 7, Chapter 8 of the Code of West Virginia, 1931.

These contentions the defendants deny.

The relator also insists· that it was error for the trial court to enter judgment against him for costs.

The pertinent portion of the statute referred to is in these words:

"Every municipal corporation shall cause to be published in two newspapers of opposite politics, if there be such published therein, at a compensation not to exceed the rate provided by law for like publications, for one issue, or, if no such newspaper be published therein, to publish in pamphlet form not less than one hundred copies of a sworn statement of the financial condition of such corporation. Such statement shall contain an itemized account of the receipts and expenditures of the city or municipality, * * *. Such statement shall be prepared by the municipal corporation every twelve months and shall then be printed according to the provisions of this section. Either method of making the report shall be sworn to by the recorder, by the mayor and two members of the city council. One copy of such printed report shall be delivered to the judge of the judicial district, one to the clerk of the county court, one to the clerk of the circuit court, one shall be kept as a part of the records of the city or municipal corporation, and the remainder shall be held for distribution as called for by the taxpayers. If a city council fail or refuse to perform the duties hereinbefore named, every member of such council and the recorder thereof concurring in such failure or refusal shall be guilty of a misdemeanor, and, upon conviction thereof, shall be fined not less than ten nor more than one hundred dollars."

This statute, in practically its present form in the Code of 1931, was originally enacted as Section 1 of Chapter 52, Acts of the Legislature of 1905, Regular Session, and it appeared in the Code of 1923 as Section 2 of Chapter 47A. It is pertinent to observe that the requirement of the publication of the statement is mandatory and that failure or refusal to comply with the statute is a misdemeanor which is punishable by a fine of not more than one hundred dollars.

The defendant the board of park commissioners of the City of Huntington was created by Chapter 26 of the Acts

of the Legislature of 1925, Regular ·Session, Municipal Charters, and has existed and functioned since its creation under that statute as subsequently amended. The amendments relate to Section 11 of the act and were enacted by the Legislature as Chapter 120, Acts of the Legislature of 1933, First Extraordinary Session, and as Chapter 163, Acts of the Legislature of 1933, Second Extraordinary Session. They are not important in determining the character of the corporation created by the original act.

The statute contains thirteen sections. The title states that the act relates to the board of park commissioners of the City of Huntington. Section 1 declares that the City of Huntington in the counties of Cabell and Wayne shall constitute an independent park district to be known as the park district of Huntington. Section 2 provides that the board of park commissioners of Huntington shall be a body corporate, and as such may purchase, hold, sell, or convey real or personal property, receive any gift, grant, donation or devise, sue or be sued, contract and be contracted with and do other corporate acts. By this section it is given the management of and vested with the title to all property acquired for the use of parks, parkways, playgrounds, athletic fields, swimming pools, cemeteries and boulevards within the district, and is permitted to go beyond its territorial limits in this State to lease, purchase or acquire real estate for similar purposes.

Section 2a states that the words "park commission", as used, shall be construed to mean the board of park commissioners of the City of Huntington, the words "board of education" to mean the board of education of the independent school district of the City of Huntington, and the words "municipal authorities" to mean the governing body of the City of Huntington, unless the context in each instance indicates a contrary meaning.

Section 3 provides that six commissioners shall be nominated and elected by the voters of the district in the general election for state officers on election day, 1926, in the manner prescribed by general law for the nomination

and the election of district officers; that every two years thereafter there shall be selected two commissioners whose term of office shall begin on the first day of January following their election and shall be for six years except that two of the commissioners elected in 1926 shall serve for only two years and the two others for only four years; that not more than one half of the board shall be members of the same political party; that the commissioners shall constitute a board of park commissioners of the City of Huntington; and that they shall receive no compensation for their services.

Section 4 prescribes the form of oath to be subscribed by the commissioners to the effect that each shall faithfully perform the duties as a member of the "board of park commissioners of the City of Huntington" and provides that any vacancy occurring in the board shall be filled by it. Section 5 declares that immediately following the passage of the act the Governor shall appoint six persons who are citizens and voters of the City of Huntington, not more than three of whom should be members of the same political party, as park commissioners to hold office until the election and the qualification of the commissioners provided for in Section 3.

Section 6 requires the mayor of the City of Huntington to designate the place for the first meeting of the board and provides for its permanent organization and subsequent operation. Section 7 provides for a president and deals with his duties. Section 8 prescribes the duties of the secretary of the board. Section 9 makes provision for the meetings of the board.

Section 10 confers power upon the board of park commissioners to acquire land for a system of parks by purchase or when necessary by condemnation proceedings to be instituted under the provisions of the general statute governing such proceedings; provides that the words system of parks shall embrace any body of land of whatever shape or area designated ultimately to be used for parks, parkways, playgrounds, athletic fields, boulevards,

or streets necessary to connect parks; and directs the board of commissioners to agree with the municipal authorities of the City of Huntington as to parts of streets necessary for use in the system of parks and boulevards.

This section also gives the board the necessary authority to control all parks and other designated parts of the park system within the district; to regulate by ordinance their use; to keep them in good order and free from obstruction; to restrain and punish vagrants and other persons on designated parts of the park system, such persons arrested under the ordinances of the board to be tried by the police judge of the City of Huntington; to construct, improve and repair parks and other specified parts of the park system on any grounds controlled by the board; to acquire, lease, appropriate and control lands either within or without the city limits of Huntington; to make contracts of certain designated kinds with the board of education, the municipal authorities of the City of Huntington and the state authorities; to make contracts with any internal improvement company as to any public highway bridge to be built by the board and such company; to repair or improve any road or street which is a part of the park system; to construct public sewers in the park system in the same manner as the board of commissioners of the City of Huntington is authorized to do by statute and to create and release liens with respect to the costs of their construction under such statute; to provide by contract with the municipal authorities of the City of Huntington for the joint construction of sewers through the park system or its parts; to provide for the construction and the maintenance of a stadium and swimming pools; and to provide for the necessary equipment for the use of parks and playgrounds.

Section 11, which has been amended from time to time, in its present form confers the power upon the board, and requires it, annually to levy a tax on the taxable property in the district for the purposes of the act and constitutes the treasurer of the city the treasurer of the board. Section 12 vests in the board the title to all parks, park-

ways, playgrounds, athletic fields, cemeteries and boulevards, which had formerly been vested in the City of Huntington. Section 13, the final section of the act, requires the municipal authorities of the City of Huntington to transfer to the board all sums in the treasury of the city remaining to the credit of the park and cemetery funds, and to turn over to the board any unpaid accounts against those funds and any unexecuted contracts relating to them.

From the foregoing provisions of the statute it is manifest that the purpose of the act was to place the ownership and the exclusive control and supervision of all property within the district, and that acquired by the board outside the district, used or usable for parks or as designated parts of the park system, in the board of park commissioners of the district and that the statute created the board of park commissioners as a separate and independent public corporation to administer and carry out the provisions of the act.

There have been many attempts to define a municipal corporation. In *Brown* v. *Gates,* 15 W. Va. 131, this Court quoting with approval Dillon on Municipal Corporations, says: "Municipal corporations are bodies politic and corporate * * * established by law to share in the civil government of the country, but chiefly to regulate and administer the local or internal affairs of the city, town or district which is incorporated", and that "A municipal corporation is also defined to be 'an investing the people of a place with the local government thereof' ". In *State ex rel. Thompson* v. *McAllister,* 38 W. Va. 485, 18 S. E. 770, 24 L. R. A. 343, it is said that a municipal corporation is "the legislative grant of local self-government to the inhabitants within a certain designated territory, which is known as the 'city,' 'town,' or 'village,' and corporate powers granted are exercised by its inhabitants in its corporate name." In Dillon on Municipal Corporations, 5th edition, Vol. 1, Section 31, the learned author says: "A *municipal corporation* in its strict and proper sense, is the body politic and corporate constituted by the incorpo-

ration of the inhabitants of a city or town for the purposes of local government thereof." One recognized legal treatise uses this language with respect to municipal corporations: "In this country, municipal corporations are usually classified as cities, towns and villages. * * * While the term 'municipal corporation' is sometimes used, in its broader meaning, to include such public bodies as the state and each of the governmental subdivisions of the state,—such as counties, parishes, townships, hundreds, etc.,—it ordinarily applies only to cities, villages and towns which are organized as full-fledged public corporations." 37 Am. Jur., Municipal Corporations, Sections 5 and 6. Another standard work says: "A municipal corporation is commonly called a 'municipality' * * *. The term includes cities of all classes as well as towns. * * * Public corporations are classified as municipal, quasi-municipal, and public-quasi corporations. Public corporations include not only municipal corporations, but all other incorporated agencies of government of whatever size and form or degree * * *. While all municipal corporations are public corporations, all public corporations are not municipal corporations." 43 C. J., pages 66, 67, 72 and 73. Cities, towns and villages are regarded as true municipalities whereas counties, highway districts, and school districts are considered not to be municipalities but "quasi municipalities", or public corporations. *Missoula* v. *Holmes, Auditor*, 100 Mont. 356, 47 P. 2d 624, 100 A. L. R. 581; *Strickfaden* v. *Highway District*, 42 Idaho 738, 248 P. 456, 49 A. L. R. 1057. Though such public bodies as school districts, boards of education, boards of water commissioners and boards of park commissioners have been recognized by some courts as municipal corporations, *West Chicago Park Commissioners* v. *Chicago*, 152 Ill. 392, 38 N. E. 697; *Elie* v. *Adams Express Co.*, 300 Ill. 340, 133 N. E. 243; *Denver* v. *Spencer*, 34 Colo. 270, 82 P. 590; *People* v. *Salomon*, 51 Ill. 37; *West Chicago Park Commissioners* v. *McMullen*, 134 Ill. 170, 10 L. R. A. 215; *Rutledge* v. *Greater Greenville Sewer District*, 139 S. C. 188, 137 S. E. 597, cited and relied on by the relator, they are not municipal corporations or municipalities in the proper sense.

The Legislature of this State, in creating and regulating municipal corporations, has referred to them in various terms which indicate that the words mean, and are limited to, cities, towns and villages. In Section 1, Article 1, Chapter 8, the chapter of the Code of 1931 which deals generally with the subject of municipal corporations, the language is: "Except as otherwise provided in this chapter, the terms 'municipal corporation', 'municipality' and 'town', shall include any incorporated city, town or village * * *". The statute which requires every municipal corporation to publish the designated financial statement is a part of Chapter 8 of the Code of 1931, 8-7-7, and the language of Section 1, Article 1 of Chapter 8 applies to the provisions of Secton 7, Article 7 of the same chapter. Use of the words "municipal corporations" in the sense of an incorporated city, town or village occurs in other statutes and in the "Home Rule Amendment" to the Constitution of this State. See Section 1 (b), Chapter 17, Acts of the Legislature of 1915, Regular Session, relating to hydroelectric power; Chapter 5, Acts of the Legislature of 1916, Third Extraordinary Session, dealing with primary elections, and Chapter 56, Acts of the Legislature of 1937, Regular Session, as amended, and Article VI, Section 39 (a), Constitution of West Virginia, with respect to home rule for municipalities.

It should be observed that Chapter 91, Acts of the Legislature of 1939, Regular Session, authorizes and empowers every municipality in this State, which is there defined to mean any city or incorporated town, to create, by ordinance, a board of park commissioners for the purpose of establishing, improving, developing, operating and maintaining a municipal park system and provides in detail for its operation. The board of park commissioners when so created is declared to be a public corporate body. This statute, however, does not apply to the board of park commissioners of the City of Huntington whose status must be considered in this proceeding as controlled and affected by the statute which created it in 1925.

Careful consideration of the provisions of the act of

1925 leads to the conclusion that the board of park commissioners of the City of Huntington, which by its terms is designated as a body corporate, is not a municipal corporation or a municipality in the proper or ordinary sense of any of those terms. It differs in many ways from the incorporated city, town or village which constitutes the true municipal corporation under the laws of this State. A number of these differences could be pointed out but mention of only two of them will suffice. Under the general statute, both before and since the adoption of the Home Rule Amendment to the Constitution, Article VI, Section 39 (a), and under the legislation, as amended, which makes that amendment effective, the creation of a municipal corporation depends upon the voluntary acts and the approval of the voters of the municipality, whereas the existence of the board of park commissioners of the City of Huntington resulted from the independent action of the Legislature without regard to any official expression of the inhabitants of the district concerning its establishment. A municipal corporation, created under the statutes of this State, is vested with the power and the authority to exercise and perform the functions of local self government generally, whereas the board of park commissioners of the City of Huntington was created not for the purpose of general government but for a limited and special purpose. It is a different kind of corporation from a city, a town or a village and its specific powers are limited to the operation, the maintenance, the management and the control of a system of parks. The only ordinances it is authorized to enact are those which are proper to regulate and police the park system, and its power to levy taxes is limited to the purposes of the system of parks for which the act makes provision. The power of local government, which the statute creating the board of park commissioners does not confer upon it, has been said to be the distinctive purpose and the distinguishing feature of a true municipal corporation. 37 Am. Jur., Municipal Corporations, Section 6.

As the legislation, Code, 8-7-7, which requires a municipal corporation to publish annually the financial state-

ment prescribed by its terms, makes the failure or the refusal of the designated officials to discharge the duties imposed upon them a misdemeanor and upon conviction subjects them to a fine, it is a penal statute and as such will be strictly construed. *Hall* v. *Norfolk & W. R. Co.*, 44 W. Va. 36, 28 S. E. 754, 41 L. R. A. 669, 67 Am. St. Rep. 757. Under the rule of strict construction it is obvious that the statute does not apply to the board of park commissioners and that the board is not within either the letter or the spirit of the act. *State* v. *Larkin*, 107 W. Va. 580, 149 S. E. 667; *Clear Fork Coal Co.* v. *Anchor Coal Co.*, 105 W. Va. 570, 144 S. E. 409; *Diddle* v. *Continental Casualty Co.*, 65 W. Va. 170, 63 S. E. 962, 22 L. R. A. (N. S.) 779; *Reeves* v. *Ross*, 62 W. Va. 7, 57 S. E. 284. The statute places the duty of verifying the statement upon the recorder, the mayor and two members of the council of the municipal corporation, and it is significant that no official or member of the board of park commissioners is the substantial counterpart of any of the officials mentioned in the statute which requires the publication of the statement by the municipality. The existence of somewhat similar statutes which require the publication of annual financial statements by counties, Code, 1931, 7-5-16, and by county boards of education, Chapter 33, Section 3a, Acts of the Legislature of 1937, Regular Session, indicates that the Legislature intended the statute to apply only to municipal corporations in the proper and ordinary sense and not to other types of public corporations generally.

The law is firmly established in this jurisdiction that in mandamus the relator must show a clear legal right to the remedy he seeks. *Goloversic* v. *Arnold*, 128 W. Va. 272, 36 S. E. 2d 209; *Childers* v. *State Road Commissioner*, 124 W. Va. 233, 19 S. E. 2d 611; *Ebbert* v. *Bouchelle*, 123 W. Va. 265, 14 S. E. 2d 614; *Brumfield* v. *Board of Education*, 121 W. Va. 725, 6 S. E. 2d 238; *Rusinko* v. *Shipman*, 111 W. Va. 402, 162 S. E. 315; *Antonovich* v. *Commissioner*, 110 W. Va. 273, 157 S. E. 591; *State ex rel. Woodyard Publications* v. *County Court of Hardy County*, 108 W. Va. 166, 150 S. E. 512. The relator has not satisfied that requirement in this proceeding.

The relator complains of the action of the circuit court in entering judgment against him for costs. At common law costs in all types of litigation, including mandamus, were unknown. *Burdette* v. *Campbell,* 126 W. Va. 591, 30 S. E. 2d 713; *State ex rel. Eliot* v. *Lake Torpedo Co.,* 90 Conn. 638, 98 A. 580, L. R. A. 1916F 1033; 38 C. J. 951; 35 Am. Jur., Mandamus, Section 393. The allowance of costs is the creature of and is regulated by statute. *Burdette* v. *Campbell,* 126 W. Va. 591, 30 S. E. 2d 713. In this State, by statute, Code, 1931, 53-1-8, in a proceeding in mandamus the writ may be awarded or denied with or without costs as the court or the judge may determine. By this statute the award or the denial of costs in such proceeding is discretionary. It has been held that when a proceeding in mandamus is instituted by a public officer in the interest of the public and in good faith no costs should be allowed upon denial of the writ, *Clute* v. *Ionia Circuit Judge,* 131 Mich. 203, 91 N. W. 159; and where the question involved is of a public nature and the defendant is a public officer no costs will be awarded. *Shupert* v. *Edwards,* 214 Mich. 333, 183 N. W. 57. In jurisdictions in which the court is vested by statute with discretion with respect to the allowance of costs in a proceeding in mandamus, they will not necessarily be assessed against a public officer or a public board; and when the refusal to perform the act in question is in the exercise of good faith and on reasonable grounds costs will not be allowed against such officer or board even though the writ may issue. 38 C. J. 954. In *State ex rel. Board of Education* v. *Cavendish,* 81 W. Va. 266, 94 S. E. 149, this Court recognized the general rule that costs should not be adjudged against a public officer, proceeded against in mandamus, who is honestly and in good faith endeavoring to perform his duty as he conceives it to be, though in that case the conduct of the defendant was held to justify a departure from the rule, and costs were awarded against him. According to the weight of authority, a public officer who is a party to litigation as a representative of the interests of the public, is not personally liable for costs of the suit when he has acted in good faith and the proceeding has

not resulted from any negligence or misconduct on his part. 14 Am. Jur., Costs, Section 37. An award of costs in mandamus against a public officer who institutes such proceeding in the public interest and in good faith, in the event the writ is denied, would have a tendency to deter such officer from undertaking the performance of his duty in instances in which his ultimate success may be doubtful and such award should not ordinarily be made by the court. In adjudging costs against the relator the trial court, in the absence of circumstances justifying its action, ignored the general rule.

The circuit court should not have awarded costs against either the relator or the defendants. The judgment, in so far as it adjudges costs against the relator, is modified so as to vacate any award for costs and, as so modified, it is affirmed.

*Modified and affirmed.*