**ACME FAST FREIGHT, Inc., Plaintiff,**

v.

**UNITED STATES of America,
Defendant,**

and

**Interstate Commerce Commission, National Motor Freight Traffic Association, Inc., The Eastern Central Motor Carriers Association, Inc., Intervening Defendants.**

United States District Court
S. D. New York.

May 13, 1957.

George H. Leonard, New York City, for plaintiff.

Victor R. Hansen, Asst. Atty. Gen., Anti-Trust Division Dept. of Justice, by E. Riggs McConnell, Washington, D. C., and Paul Williams, U. S. Atty. for the Southern District of New York, New York City, by Robert J. Ward, Asst. U. S. Atty., New York City, for United States.

Robert W. Ginnane, Gen. Counsel by H. Neil Garson, Asst. Gen. Counsel, Washington, D. C., for Interstate Commerce Commission.

William C. Chanler, New York City, John C. Bradley, Edgar Watkins, Wash-

**240**

ington, D. C., for intervenors. Winthrop, Stimson, Putnam & Roberts, New York City, Rice, Carpenter & Carraway, Watkins & Rea, Washington, D. C., of counsel.

Before LUMBARD, Circuit Judge, and DIMOCK and WALSH, District Judges.

PER CURIAM.

This is an action to enjoin, set aside and annul an order of the Interstate Commerce Commission[1] directing plaintiff to cease and desist from maintaining an unlawful terminal area. The complaint is dismissed.

Plaintiff is a freight forwarder operating in 246 cities throughout the United States including the Oakland-San Francisco Bay area. Its function is to assemble less than carload lots of freight into carload lots for particular destinations, and, conversely, to receive carload lots destined for more than one consignee, break them down, and distribute them to consignees within its terminal area.

■ The controversy centers upon the size of plaintiff's terminal areas. Within these areas, under the Interstate Commerce Act, 49 U.S.C.A. § 1 et seq., it is permitted to perform the work of picking up and distributing freight by using its own vehicles or those of another carrier.[2] It is not necessary that either it or its carrier have an I.C.C. certificate of convenience and necessity for the transportation of freight between or among the various communities in this area, as is required of regulated carriers by 49 U.S.C. § 306. Outside the terminal area, however, it would be necessary for the plaintiff to interchange the freight with a carrier having such a certificate.

In a proceeding known as Ex-Parte MC-37 Commercial Zones and Terminal Areas, 46 M.C.C. 665, 48 M.C.C. 95, 48 M.C.C. 418, 48 M.C.C. 441, 51 M.C.C. 676, 53 M.C.C. 451, 54 M.C.C. 21, 54 M.C.C. 615, the Interstate Commerce Commission promulgated a regulation providing for the uniform establishment of terminal areas for freight forwarders and motor carriers throughout the United States, and establishing their limits as including a municipality and a surrounding area, the size of which depended upon the population of the municipality. This proceeding was an extensive one in which both motor carriers and freight forwarders, including the plaintiff, were represented.[3] At first, consideration was given to an attempt to establish a terminal area custom-tailored to each city.[4] It was found, however, that such an effort would overwhelm the facilities of the Commission.[5] It was thereupon determined that the terminal area of each municipality should be established in substantial conformity with its commercial zone[6] which in turn was to depend upon the uniform application of a formula based upon the population of the municipality.[7]

■ The order under review was entered in an enforcement proceeding, No. 31730, commenced by the Commission after it found, from a routine examination of the tariffs filed with it, that certain of plaintiff's terminal areas appeared to be substantially more extensive than that provided by the regulation promulgated in MC-37. Plaintiff had undertaken to serve these areas during a period when there was no Commission definition to guide it and it persisted after the promulgation of this regulation in 1948.[8]

1. I.C.C. I & S Docket No. 6332, Freight Forwarder Terminal Areas, No. 31730, Forwarders' Defined Terminal Areas, dated September 20, 1956.

2. Interstate Commerce Act Part II · § 202(c), 49 U.S.C. § 302(c); Interstate Commerce Act Part IV § 418, 49 U.S.C. § 1018.

3. 46 M.C.C. 665, 666–67.

4. 46 M.C.C. 665, 669–71; 54 M.C.C. 21, 50–51.

5. 46 M.C.C. 665, 670–71.

6. 48 M.C.C. 418, 423; 54 M.C.C. 21, 22.

7. 46 M.C.C. 665, 698–99.

8. 48 M.C.C. 418, 433.

It is undisputed that plaintiff serves terminal areas of greater size than those authorized by the Commission's regulation and the Commission so found. This, we believe, in itself, is sufficient legal support for the order which it entered.

Plaintiff claims, however, that it was entitled to show the economic justification for the larger terminal areas which it has been serving and to have the Commission pass upon this question in this proceeding. The Commission directed its examiner to receive this proof [9] but it held that it was not relevant to the issue under consideration; that the only question before it was compliance or noncompliance with the uniform regulation already promulgated.

We believe the Commission was correct. Once its regulation was promulgated it had no authority to authorize a variance, except by an amendment to the regulation, at least unless the regulation itself provided for the granting of such variances. Section 406(b) of the Interstate Commerce Act, 49 U.S.C. § 1006(b), requires the Commission to take appropriate action to enforce its regulations if it learns, either by complaint or its own investigation, that these regulations are being violated. The plaintiff has been unable to show any authority for the Commission to exercise discretion in such matters. Accordingly, in the present proceeding there was only one question and that was whether or not the terminal area in fact exceeded that authorized by Commission regulation. The justness or reasonableness in the plaintiff's serving a more extensive terminal area was not properly before the Commission in this proceeding.

This question of justness or reasonableness should have been presented by an appropriate application in proceeding MC-37. This is no mere procedural nicety. The issue raised by the plaintiff cannot be determined by the impact of the regulation upon it alone. In an appropriate proceeding there would be two questions. First and foremost, should any exception be made to the uniform Commission regulation and, second, should an exception be made in favor of the plaintiff. The first question is the primary question and that may only be determined upon the consideration of nation-wide factors. The wisdom of uniform regulations, like the wisdom of legislation, can rarely be determined by examining their impact upon a single individual. MC-37 offers the proper vehicle because in that proceeding the parties offer full representation of the industry whereas in the present proceeding a much narrower segment of the industry was represented.

Complaint dismissed.

---

9. Order dated April 5, 1955, I & S Docket No. 6332 p. 2.