**PALMER LINES, INC., Plaintiff,**

v.

**UNITED STATES of America,
Defendant,**
and
**Interstate Commerce Commission,
Intervening Defendant.**

Civ. A. No. 57–375–M.

United States District Court
D. Massachusetts.

Dec. 3, 1959.

Thomas D. Murphy, Chicopee, Mass., Patrick A. Doyle, Springfield, Mass., Wallace R. Burke, Hartford, Conn., for plaintiff.

H. Neil Garson, Asst. Gen., Counsel Washington, D. C., for defendant.

Before HARTIGAN, Circuit Judge, and WYZANSKI and McCARTHY, District Judges.

HARTIGAN, Circuit Judge.

This is an action to set aside two orders of the Interstate Commerce Commission (hereinafter called the Commission) brought by the plaintiff, a Massachusetts corporation, under 28 U.S.C. §§ 1336, 1398, 2321–2325 and 49 U.S.C.A. § 17(9). The first order attacked resulted from proceeding No. MC–C–1441, Mullen Bros., Inc. v. Palmer Lines, Inc. On December 29, 1953 the Commission, Division 5, entered a decision and order, 62 M.C.C. 357, requiring Palmer Lines, Inc. to cease and desist from certain operations in the town of Pownal, Vermont

found to be unauthorized and unlawful. Petitions for reconsideration were denied by the entire Commission. Later another petition for reopening and reconsideration was filed, relying on another ground for authorization of the Pownal operations. The Commission issued a report, 66 M.C.C. 637, and denied the petition, holding that the newly urged ground was without merit. The second order attacked is that issued in connection with proceeding entitled Ex parte No. MC–37, Commercial Zones and Terminal Areas, 46 M.C.C. 665, 48 M.C.C. 418, 54 M.C.C. 21, the pertinent parts of which exclude New England type towns from the term "municipality" as used in Section 203(b)(8) of the Interstate Commerce Act, Part 2, 49 Stat. 543, 545–546, 49 U.S.C.A. § 303(b)(8)[1] and adopt the § 203(b)(8) formula as the definition of authorized operations in terminal areas. 46 M.C.C. 665, 679–80, 54 M.C.C. 21, 61–64, 108.

Palmer Lines, Inc. (hereinafter called Palmer) is a common carrier authorized by a certificate issued by the Interstate Commerce Commission to transport general commodities between Williamstown, Massachusetts and Philadelphia, Pennsylvania, over regular routes, and similarly between North Adams, Massachusetts and New York, New York.

Palmer was charged by Mullen Bros., Inc. with unlawfully serving a shipper located in the town of Pownal, Vermont. Palmer admitted that it was transporting freight to and from Pownal, Vermont, but argued that it was authorized to serve Pownal on two grounds. Its first ground for authorization was by virtue of its certificate authorizing service to Williamstown and the Commission's construction in Ex parte No. MC–37, 54 M.C.C. 21, 108 of such certificates as "authorizing service at all points or places which are within the commercial zone of that municipality * * * and not beyond the territorial limits, if any, fixed in such certificate." Palmer contended that since the town of Pownal is a municipality contiguous to the town of Williamstown and therefore within its commercial zone, Palmer could serve the town of Pownal. Plaintiff's second ground was by virtue of its certificate authorizing service to North Adams, Massachusetts, a city having a commercial zone, and the above construction of operating authority. Plaintiff contended that since the town of Pownal, Vermont is a municipality part of which is within 3 miles of the corporate limits of North Adams, and therefore Pownal is within its commercial zone, plaintiff could serve all of the town of Pownal.[2]

The decision of Division 5 of the Commission rejected the first contention of authority for the Pownal operations on the grounds that Williamstown was not a "municipality" having a commercial zone, and that the grant of authority to serve Williamstown was a territorial grant and no authority to serve beyond the territory of the town of Williamstown could be construed from it. The

---

1. "(b) * * * nor * * * shall the provisions of this chapter, * * * apply to: (8) The transportation of passengers or property in interstate or foreign commerce wholly within a municipality or between contiguous municipalities or within a zone adjacent to and commercially a part of any such municipality or municipalities, except when such transportation is under a common control, management, or arrangement for a continous carriage or shipment to or from a point without such municipality, municipalities, or zone, * * *."

2. "In the original report in the ex parte proceeding it was found, so far as here material, that the commercial zones of municipalities (other than those whose commercial zones might be specifically and individually defined) having populations of 2,500 but less than 25,000 consist of (1) the municipality itself, (2) all contiguous municipalities, (3) all other municipalities and all unincorporated areas which are within 3 miles of the corporate limits of the base municipality and all of any municipality any part of which is within 3 miles of the corporate limits of the base municipality, and (4) all of any municipality wholly surrounded by the base municipality, by any continuous (sic) municipalities, or by any municipality included under the terms of (3) above, * * *." 62 M.C.C. 357, 362.

report also approved the examiner's rejection of arguments made by Palmer similar to those made here. The second ground for authority to serve Pownal was rejected by the entire Commission in its later report and order denying the petition by Palmer for reopening. The Commission based its rejection on the finding that Pownal was a New England type town, and therefore not a "municipality" within the meaning of § 203(b) (8). The Commission found that consequently only a part of the town of Pownal was within the commercial zone of North Adams, and that the operations by Palmer were in the unauthorized portion of the town of Pownal. The entire Commission also considered and again rejected the contentions of Palmer challenging the MC–37 order excluding New England type towns from the term "municipality" as used in § 203(b) (8).

Palmer contends in this action first, that the term "municipality" in § 203(b) (8) is clear on its face, and therefore the Commission had no authority to construe it to exclude New England type towns; second, that the interpretation of the term to exclude New England type towns is discriminatory and in violation of the National Transportation Policy; and third, that the Commission's finding that Williamstown and Pownal are New England type towns is not supported by substantial evidence. The Commission (and the United States) argues in opposition to these contentions and also that the Commission's action in the MC–37 proceeding is not properly reviewable here since Palmer did not exhaust its administrative remedies in regard to such action for the Commission.

To clarify the questions presented to this Court it is necessary to trace the relation between § 203(b) (8) and the question of Palmer's authority to serve Pownal, Vermont. Section 203(b) (8) exempts from the statute certain traffic which, although across state lines, is regarded as essentially intracommunity. The exemption has a specific exception to traffic which is a continuous carriage to or from points outside the community.

Palmer in its service of Pownal, Vermont is a line-haul carrier, i. e. carrying the goods from Pownal to points in New Jersey and Pennsylvania, and not a local carrier; therefore it falls within the exception to the § 203(b) (8) exemption. However, the Commission in defining the terminal area authority of line-haul carriers has decided that "the limits of bona fide collection, delivery, or transfer service incidental to intercity or intercommunity service of any motor common carrier * * * at any municipality authorized to be served are, subject only to operating authority limits, coextensive with commercial-zone limits of that municipality; and * * * that the terminal area of any motor common carrier subject to part II of the act * * * at any municipality * * * consists of, and includes, all points and places within the commercial zone of such municipality as defined by this Commission." 54 M.C.C. 21, 98–99. In this way § 203(b) (8) and the Commission's interpretation of it are brought into this action concerning Palmer's terminal area authority.

■■ The Commission's rejection of the justification of Palmer's Pownal operations based on the authority to serve Williamstown must be upheld in our view of the law. The Commission has consistently construed certificates authorizing service to a specifically named point in New England "which is the name both of a 'town' and the name of a community within that town, as conferring the right to serve all points in the town." J. E. Faltin Motor Transp., Inc. Ext.—Alternate Route, 51 M.C.C. 125, 128. But a grant of authority to serve points in a particular township is viewed as a territorially limited operating authority, which "must be construed as definitely limiting the authority granted to the described boundaries." Transportation Activities of Tornetta, 48 M.C.C. 637, 643. See also Ex parte MC–37, Commercial Zones and Terminal Areas, 54 M.C.C. 21, 92–93. The court is bound by the Commission's construction of the scope or coverage of a certificate unless the Commission's construction is clearly wrong

or arbitrary. A. B. & C. Motor Transportation Co. v. United States, D.C.D. Mass.1955, 130 F.Supp. 87; Adirondack Transit Lines v. United States, D.C.S.D. N.Y.1944, 59 F.Supp. 503, affirmed, 1945, 324 U.S. 824, 65 S.Ct. 688, 89 L.Ed. 1393. We do not believe that the Commission's interpretation of the authority to serve Williamstown is clearly wrong or arbitrary.

The second ground for authorization of the Pownal operations was held by the Commission to be without merit because the town of Pownal is a New England type town and, as such, is not included in the commercial zone of North Adams, therefore terminal area operations in the whole of the town of Pownal are not authorized by the certificate to serve North Adams. At the rule-making proceeding in regard to terminal area authorization for line-haul carriers, the Commission decided to equate the authorized terminal area for them with the area of exemption for local carriers under § 203(b) (8). This decision of the Commission is not assailed by Palmer. But because of the stated purpose of making these areas co-extensive, the ruling on terminal areas places in issue the correctness of the Commission's construction of § 203(b) (8) that "municipality" does not include New England type towns.

■ The Commission contends that the ruling in Ex parte MC–37 is not open to review by this court because Palmer's challenge constitutes a collateral attack and Palmer has not exhausted its administrative remedies in relation to the ruling in Ex parte MC–37. The Commission cites Acme Fast Freight v. United States, D.C.S.D.N.Y.1957, 154 F.Supp. 239. In the Acme case, however, it was undisputed that the freight forwarder was serving terminal areas greater than those authorized, but the freight forwarder wished to show economic justification for a larger terminal area and to have the Commission pass on this issue. The court held that "the justness or reasonableness in plaintiff's serving a more extensive terminal area was not properly before the Commission in this proceeding." Id. at page 241. The court felt that any question of variance of the uniform regulations should have been presented by an appropriate application in the MC–37 proceeding, particularly in view of possible "nation-wide factors." In the instant case, there is no challenge in the nature of justification of a variance, but rather an attack on the Commission's construction of a statutory term. This makes the instant case, in our view, analogous to United States v. American Trucking Ass'ns, 1940, 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345, and the issue of the Commission's construction is properly before us for decision.[3]

■ Turning to the statute to determine the meaning of § 203(b) (8), we do not find that the term "municipality" is specifically defined in the Act. 49 U.S.C. § 303(a) (1–23). "Municipality" is a term which has been used to cover a multitude of governmental bodies, see 27 Words and Phrases, Municipality pp. 790–798 (1940) and Pocket Part. Its meaning contracts or expands depending on the context and purpose of the statute in which it is used. Since the words themselves in § 203(b) (8) give no indication of the meaning intended, we turn to the legislative history and the policy of the Act as aids in determining the intent of Congress. The only part of the legislative history that seems helpful is the explanatory remarks by Senator Wheeler on the floor of the Senate. The examples of exempted transportation given are "between New York City and New Jersey, and also, for instance, as between

---

3. The Commission has the power under the statute to exclude traffic from the exemption provisions of § 203(b) (8)–(9) if application of the Act is necessary to carry out the national transportation policy declared in the Act. Charles Noeding Trucking Co. v. United States, D.C.,

D.N.J.1939, 29 F.Supp. 537. However, we do not believe the ruling in regard to New England type towns constitutes such a finding. We view it rather as a construction of a term of the Act by the Commission.

Washington and Alexandria, and other contiguous cities." 79 Cong.Rec. 5650 (1935). We note that these examples are urban areas.

▆ The Commission has interpreted the statutory term "municipality" to exclude New England type towns, not only in Ex parte MC–37, but also in an earlier ruling by the Bureau of Motor Carriers, Ruling No. 87, April 23, 1940. In MC–37 the Commission stated: "[I]t is clear that [municipality] does not include either townships or towns of the township or New England type * * *. They generally contain within their boundaries much territory which is definitely rural in character * * *. The result, clearly not intended, would be commercial zones of great size, based on other than urban or suburban communities. * * *" 46 M.C.C. 665, 679. The Commission's rulings are entitled to great weight. United States v. American Trucking Ass'ns, supra; Doyle Transfer Co. v. United States, D.C.D.C. 1942, 45 F.Supp. 691. In view of the examples given in debate, and the weight which is to be given to the Commission's interpretation, we believe that excluding New England type towns from the term "municipality" is not contrary to the intent of Congress.

Since we believe that the statutory term has reference to governmental divisions which are essentially urban in character and does not include a type of town which is not essentially urban, there is no discrimination against a particular area of the country nor is the interpretation violative of the National Transportation Act.

▆▆ The sole remaining contention of Palmer is that the Commission's conclusion that the town of Pownal, Vermont is a New England type town is not supported by the evidence. However, Palmer has not put the evidence which was presented to the Commission before this court. Therefore the findings of the Commission are accepted as true. Mississippi Valley Barge Line Co. v. United States, 1934, 292 U.S. 282, 54 S. Ct. 692, 78 L.Ed. 1260. Thus the only

inquiry left is "whether they give support to the conclusion [of the Commission.]" Id. 292 U.S. at page 286, 54 S. Ct. at page 694. The findings from which the Commission concluded that Pownal was a New England type town are: Pownal "is roughly 6½ by 7½ miles and so contains approximately 49 square miles. The population of this entire area is only approximately 1,453. It is not a compact urban community. On the contrary there are within it three separate unincorporated urban communities. * * * It was incorporated in 1760, is governed by a board of three selectmen, and is primarily a farming area." These findings amply support the Commission's conclusion that the town of Pownal is a New England type town.

An order will be entered denying the relief sought by the plaintiff and dismissing its complaint.