ROADS, BRIDGES AND FERRIES
The meaning of the phrase "benefit the municipality" in 69 O.S. 1205 [69-1205](d) (1971) is not limited to a strictly economic advantage to the municipality, but also includes highways which will afford a municipality access to its facilities such as water or sewage treatment plants or sanitary disposal facilities. The phrase "benefit the municipality" in 69 O.S. 1205 [69-1205](d) (1971) does not conflict with the effect of the preceding clause of the same sentence because not every highway passing within the limits of a municipality would benefit the municipal government. The Attorney General has received your letter of May 6, 1977, wherein you ask, in effect, the following questions: 1. Does the phrase "benefit the municipality" in 69 O.S. 1205 [69-1205](d) (1971) require that the benefit be a direct economic payment to the city government such as paying the city for city-owned property as right of way? 2. Does that phrase conflict with the effect of the preceding clause of the same sentence? Title 69 O.S. 1205 [69-1205] (1971) establishes by law the policy the Transportation Commission must follow for the acquisition of right of way for highways. The text of the statute reads as follows: "The policy which the Commission shall follow in the acquisition of all rights-of-way shall be as follows: "(a) For construction on the Interstate Highway System within the limits of municipalities having a population of five thousand (5,000) or more, Federal aid funds, if available, may be used for the acquisition of rights-of-way, and shall, if available, may be used to pay the cost of the removing or relocating of utility facilities located in either privately-owned or public rights-of-way, and in such event the municipality in which such construction is to be performed shall furnish funds to the State necessary to match the Federal funds. "(b) For construction on the Interstate Highway System in all locations other than within the limits of municipalities having a population of five thousand (5,000) or over, and where control of access is required, the State shall furnish all rights-of-way and may use Federal aid funds, if available, for such purpose, and when Federal aid funds are available for such purpose, shall pay the cost of removing or relocating utility facilities located on either privately-owned or public rights-of-way. "(c) For all construction projects within the limits of municipalities, other than projects on the Interstate Highway System, as described in the Federal Aid Highway Act of 1956, the municipality or county involved and the Department shall equally share the cost of all necessary rights-of-way, clear of all obstructions, including structures of any kind or nature and utility lines, poles, pipelines or other facilities above or below the surface of the ground. If Federal aid funds are available for the project, the municipality or county and the Department shall equally share the local portion of the costs for acquiring and clearing the right-of-way, including the cost of removing and relocating utility facilities located on privately-owned rights-of-way. "(d) In any municipality where the Commission has determined it to be necessary to construct a highway through or within the corporate limits, and further determines that the construction will not benefit the municipality involved, or the construction will benefit State-owned property or institutions, the Commission may, in its discretion, pay for or participate in the cost of rights-of-way for such project. "(e) For all reconstruction or widening projects on existing improved roads of permanent-type surface in rural areas, the Department shall pay fifty percent (50%) of the cost of any additional rights-of-way required to meet right-of-way standard-width requirements, and the remaining fifty percent (50%) shall be furnished or paid for by local units of government; provided, however, that no right-of-way shall be acquired under the terms of this Article, except by due process of law. "(f) Repealed by Laws 1971, c. 355, Section 8 eff. July 1, 1972. "(g) For new construction on unsurfaced roads where the construction follows a section line or an existing unimproved road, all rights-of-way shall be furnished by local units of government free of cost to the Department; provided, should the new or additional rights-of-way, either contiguous or adjacent to the section line or existing unimproved road, be acquired only on one side of the section line or road, then one-half (1/2) of the cost shall be borne by the State. "(h) For all new construction diagonally across country or not following on a section line road or other existing unimproved road, the rights-of-way shall be paid for by the Department. "(i) In securing the necessary rights-of-way in rural areas, the State shall pay for all damages to buildings, improvements, fences and all other appurtenances thereto, or their moving and relocating. "(j) In any county where a proposed alignment for a high way project on the primary system shall not come within one half (1/2) mile of the limits of any municipality within the county, or contribute to the highway transportation system or to the economy of the county, the Commission may in its discretion increase the amount of the State's participation in the cost of rights-of-way for such projects. "(k) The term 'utility facility' as used herein means any publicly, privately, municipally or cooperatively owned facility or system which is used to provide water, power, light, gas, sewer, telegraph, telephone and communications, or like utility service, to the public in the State of Oklahoma, or some portion thereof ." In syllabus note 1 of the case of McSpadden v. Mahoney, Okl., 402 P.2d 656 (1965), the Court declared: "In the construction of a statute, legislative intent must govern. In arriving at such intent the entire Act must be considered . . . " 402 P.2d at 657. Subsection (c) of 69 O.S. 1205 [69-1205] states the broadest, and therefore, the general policy to be followed by the Commission in relation to acquisition of right-of-way through municipalities. Generally, the Department of Transportation and municipality are required to equally share the costs of right-of-way and movement of "utility facilities". Subsections (a) (b) and (g) are exceptions to the general rule concerning acquisition right-of-way in municipalities. Subsection (a) and (b) exclude from the general rule all construction within the limits of municipalities related to the Interstate Highway System. In municipalities of population less than 5,000, the Department must bear all costs of right-of-way acquisition. In municipalities greater in population than 5,000, the municipality must bear this burden alone unless Federal monies are available; then the municipality must bear the local share required in order to receive the Federal money. When new construction is to be performed upon an unsurfaced road within the limits of a municipality, and the road follows a section line or existing unimproved road, subsection (g) requires the municipality to supply all right of way free of cost to the department; both present, and such additional right of way as is required by State specifications. The subsection provides that, should additional right-of-way be required only on one side of the existing unimproved road or section line, then the Department must pay the one-half cost of such acquisition. Subsection (d) gives the Commission the authority, at the Commission's discretion, to ignore the general and special rules relating to right-of-way acquisition costs when the controlling circumstances of subsection (d) are found to exist by the Commission. If either of the following controlling circumstances are found to exist, the Commission may exercise said discretion: (1) That the construction of the road will not benefit the municipality through which it passes, (2) That the road constructed will benefit State-owned property or institutions. Threshold to the answer to your first question is the Legislature's intended meaning of the word "benefit" in the phrase "not benefit the municipality". In Stemmons, Inc. v. Universal C.I.T. Credit Corp., Okl., 301 P.2d 212 (1956), the Court stated: ". . . In absence of an attempt to define any of the terms used in the statutes in question, it must be presumed the Legislature considered it unnecessary to define particular words and phrases, and that it was intended only that same bear their usual and commonly accepted meaning . . ." 301 P.2d at 216. In the whole of 69 O.S. 1205 [69-1205], only "utility facility" has been given special meaning by the Legislature. It is necessary, therefore, to presume that the Legislature intended that the "commonly accepted meanings" of all other words should apply. "Benefit" is defined by Webster's New International Dictionary (unabridged, 2nd ed.): ". . . To gain advantage; to receive benefit; to profit; as, he will benefit by the change." Black's Law Dictionary (Revised 4th ed.) defines the word as: "Advantage; profit; fruit; privilege . . ." Subsection (d) is the only subsection of 69 O.S. 1205 [69-1205] that requires a determination of whether a road will be of value to the region through which it passes. The second controlling circumstance permits the Commission to pay for right-of-way acquisition if the Commission determines that the road would benefit State-owned property or institutions. The context in which "benefit" is used suggests that its meaning should be synonymous with "advantageous" and not fall within the more narrow, pecuniary sense of profit. Therefore, if a road is determined by the Commission to be advantageous to State-owned property or institution, then the Commission is authorized the discretion to elect to pay for, or participate in the payment of, costs incident to the purchase of right-of-way. The argument could be made that any highway running through a municipality would benefit the municipality. If this were true, the discretion given to the commission in 69 O.S. 1205 [69-1205](d) would have no effect. It is apparent that the law contemplates that every highway running through a municipality is not, per se, a benefit to the municipality. If the same meaning is described to "benefit" in the first controlling circumstance, the determination for the Commission would be whether or not the road would be advantageous to the municipality. It therefore becomes critical to determine in what sense "municipality" was intended by the Legislature to be construed. " 'Municipality' is a term used to cover a multitude of governing bodies . . . . Its meaning contracts or expands, depending on the context and purpose of the statute in which it is used." Palmer Lines, Inc. v. United States, D.C. Mass., 179 F. Supp. 629, 633
(1959). The Legislature prescribed two basic policies for right of way acquisition in "municipalities", another for acquisition in "rural" or "country" areas. In such a context the evident purpose was to use "municipality" in its most popular sense, i.e., to mean city or town. As was said by the West Virginia Supreme Court: "Cities, towns and villages are regarded as true municipalities whereas counties, highway districts, and school districts are considered not to be municipalities but 'quasi municipalities', or public corporations." State ex rel Koontz v. Board of Public Commissioners of City of Huntington, 131 W. Va. 417, 47 S.E.2d 689, 694 (1948). After determining that "municipality" means city or town, it becomes necessary to determine whether it means the community at large or the governing subdivision of the State. Subsections (a) and (c) both describe the duty of the municipality to pay for the acquisition of right of way. Subsection (g) refers to the "local unit of government"; a reference to the fact that the subsection applied to both municipal and county governments. Used within the context of the statute it becomes clear that "municipality" refers to the government of the community and not the community at large. Armed with the above definitions of the words "benefit" and "municipality", it becomes possible to define the limits of the first controlling circumstance of subsection (d). The Commission has discretionary authority to pay, upon the commission's election, all or part of the cost of acquisition of right of way if the Commission determines the road not to be of advantage to the municipal government of the community through which the road passes. Every highway running through a municipality does not, per se, benefit the municipality, therefore some other advantage must accrue to the municipality as a result of the highway. A direct economic benefit to the municipality, such as payment to the city for city owned property as right of way could be considered as such a benefit as contemplated by section 69 O.S. 1205 [69-1205] (d) . This direct economic benefit however, would not be the only benefit within the purview of this section. Highways which would afford a municipality access to water or sewage treatment facilities or sanitary disposal facilities would be a highway that would benefit the municipality. It is, therefore, the opinion of the Attorney General that your first question be answered as follows: The meaning of the phrase "benefit the municipality" in 69 O.S. 1205 [69-1205](d) (1971) is not limited to a strictly economic advantage to the municipality, but also includes highways which will afford a municipality access to its facilities such as water or sewage treatment plants or sanitary disposal facilities. It is further the opinion of the Attorney General that your second question be answered in the negative. The phrase "benefit the municipality" in 69 O.S. 1205 [69-1205](d) (1971) does not conflict with the effect of the preceding clause of the same sentence because not every highway passing within the limits of a municipality would benefit the municipal government. (MARVIN C. EMERSON)